Clifton CRAIG, Appellant,

v.

STATE of Indiana, Appellee.

No. 1176S393.

Supreme Court of Indiana.

Jan. 9, 1980.

Barrie C. Tremper, Public Defender of Allen County, Thomas L. Ryan, Deputy Public Defender, Fort Wayne, for appellant.

Theodore L. Sendak, Atty. Gen., Rollin E. Thompson, Asst. Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant was convicted of first degree murder in the burglary-shooting death of Miss Rose DeWood in her house in Fort Wayne, Indiana. His appeal from that conviction was first considered by this Court and reported as *Craig v. State*, (1977) 267 Ind. 359, 370 N.E.2d 880. All alleged errors were there resolved against appellant save one. Appellant at trial had objected to the introduction of his inculpatory statements given to police during custodial interrogation and was erroneously denied a discrete hearing outside the presence of the jury on the objection. *Jackson v. Denno*, (1964) 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908; *Wainwright v. Sykes*, (1977) 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594. We, therefore, held the appeal in abeyance and remanded to the trial court for a hearing to determine whether appellant made a voluntary and knowing waiver of rights prior to making such statements. Following a remand Judge Moellering was selected to conduct the hearing and following it he concluded that appellant's waiver was constitutionally valid and the statements admissible. This is the appeal from that determination. Appellant with counsel fully participated in the hearing below.

The evidence given at the hearing below may be summarized. On November 19, 1975, appellant was seen by a detective of the Fort Wayne Police Department during a morning surveillance and was shortly thereafter arrested by county warrants officers on a warrant for failure to pay a fine on a misdemeanor conviction. At the time appellant was twenty-one years of age, employed by a private security company as a guard, and was well-acquainted with one Sgt. Woods of the department through whom he had sought information about joining the police department.

On the same day at 1:15 p. m., while in custody awaiting appearance in court, appellant was approached by one Detective O'Leary who expressed a desire to interview him. Appellant agreed and the detective began to read a rights advisement to him as required by *Miranda v. Arizona*, (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Appellant inquired why he was being read his rights since he was only under arrest for failure to pay a fine. The detective replied that he wished to ask him about two separate crimes under investigation and that he could not reveal the nature of those crimes without first giving a rights advisement and receiving a waiver. Appellant then stated that he would like to see Sgt. Woods who owed him a favor. Woods was summoned whereupon appellant in the presence of O'Leary and Woods signed a waiver of rights.

At this time according to the testimony of O'Leary appellant had a cast on his right arm but did not appear to be in pain. He made no complaint that he was in pain. He did not appear to be intoxicated or under drugs, and did not appear to be under severe emotional strain. No threats or outwardly coercive acts directed toward appellant took place. During the ensuing one and a half hours he was questioned about the DeWood killing and another case involving the shooting of an elderly man and provided little if any inculpatory information.

Shortly before 3:00 p. m. the interrogating officer suggested that appellant take a lie detector test after which he could go home. Appellant agreed and was again advised of his *Miranda* rights by the machine operator, Russell, and executed another written waiver form. He was then questioned about involvement in the two shootings. At the completion of the examination the operator said that he was holding something back and was not telling the truth. Appellant then admitted the fact that he shot Miss DeWood as she was screaming because he was afraid that she would be heard in the neighborhood and that he would be arrested.

The next day, November 20, 1975, one Officer Brunkhart at about 10:15 a. m. approached appellant, advised him of his *Miranda* rights, and asked him further questions regarding the shooting of the elderly man. After about an hour of questioning the officer procured appellant's lunch for him and accompanied him to a holding cell behind the court room where appellant was to appear in answer to the misdemeanor matter for which he had been arrested. While there appellant again admitted the DeWood killing under continued questioning by Brunkhart. Appellant's inculpatory admissions to Russell and to Brunkhart of the DeWood killing were admitted at trial over appellant's objection.

Appellant at the hearing below testified that at the time of the waiver of rights on the 19th he had pain in his arm and was bleeding from an infection under the fore-skin of his penis and that his interrogators refused to get him a doctor. He testified further that he was under the influence of marijuana, codeine cough medicine and pain pills, and feared for the welfare of his family. He also stated that he had been tricked by the police officers when they told him that if he took the lie detector test he could then go home.

The trial court conducting the hearing below resolved the conflict in the testimony and concluded that the waiver of right by appellant had been voluntary and knowing and that the confession was properly admitted.

■ Appellant contends that his waiver of *Miranda* rights was obtained in violation of the Fourth Amendment and therefore the subsequent confession was inadmissible. At the time of his interrogation appellant was under arrest and in custody on a warrant for having failed to pay a fine arising from an unrelated misdemeanor charge. Appellant does not contend that the warrant or his arrest upon the warrant was illegal, but that there was no probable cause to conduct an interrogation into the circumstances of a homicide and that such interrogation was completely outside the scope of a custodial arrest and detention for a failure to pay a misdemeanor fine. Appellant relies upon cases which impose Fourth Amendment restrictions upon the processes of making arrests and searches. *Wong Sun v. United States*, (1963) 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; *Go-Bart v. United States*, (1931) 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374; *Cardwell v. Lewis*, (1974) 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325. None of these cases or others of which we are aware, directly or by analogy, can reasonably be read to erect a right to be free from custodial interrogation during lawful confinement about matters unrelated to the cause of or purpose for the detention. There was here to be sure a seizure and detention of the person of appellant. But in its inception at arrest and during its continuation with confinement and interrogation the restriction upon appellant's liberty was fully justified by a warrant. The

scope of the warrant was not exceeded. See *Ludlow v. State*, (1974) 262 Ind. 266, 314 N.E.2d 750; *Kolb v. State*, (1972) 258 Ind. 469, 282 N.E.2d 541. No violation of appellant's Fourth Amendment rights occurred. The proposition that appellant's confessions were obtained by exploitation of a Fourth Amendment violation and should have been excluded in service to that provision of the Constitution is therefore untenable. *Brown v. Illinois*, (1975) 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416; *Williams v. State*, (1976) 264 Ind. 664, 348 N.E.2d 623; *United States v. Amos*, (4th Cir. 1977) 566 F.2d 899.

The prosecution faced with an objection to its attempted introduction of appellant's incriminating statements made during custodial interrogation was under a burden to show a prior valid waiver of rights beyond a reasonable doubt. *Burton v. State*, (1973) 260 Ind. 94, 292 N.E.2d 790. In making this determination a court must look to all the circumstances surrounding its giving to determine whether it was induced by any violence, threats, promises, or other improper influences. *Nacoff v. State*, (1971) 256 Ind. 92, 267 N.E.2d 165. The trial court concluded that this burden was met and on appeal therefrom we do not weigh the evidence, but determine whether there is sufficient evidence to support the trial court's ruling beyond a reasonable doubt. *Raines v. State*, (1971) 256 Ind. 404, 269 N.E.2d 378. Appellant contends that the evidence was so insufficient in that it failed to disclose that appellant was told the nature of the offenses about which he was to be interrogated and therefore could not evaluate the probable consequences of waiver.

In *Ortiz v. State*, (1976) 265 Ind. 549, 356 N.E.2d 1188, we considered a complaint of this type and concluded that a confession would not be involuntary because the suspect being interrogated did not understand the elements of the crime to which he confesses. Here appellant was aware that any statements he might make could be used against him in court. His inquiry of the interrogator about the nature of the crimes and his call for the supportive presence of his friend Sgt. Wood, coupled with his own interest and experience in law enforcement, strongly support the inference that appellant, prior to signing the first waiver, was not misled by the interrogator into believing that the questioning was to touch upon his pending misdemeanor matter, and that he was aware of the probable serious consequences of the waiver. Furthermore, appellant's incriminating statements sought to be used against him at trial were not made until after he had been again advised of his rights by the lie detector operator and had signed a second waiver. At the time this second waiver was executed the two crimes which were the subject of the interrogation had been described to appellant during an hour or more of questioning. Therefore the evidence warranted the conclusion by the requisite standard that appellant had a sufficient awareness of probable consequences of his waiver and statements to render them voluntary and knowing.

Appellant finally points to the testimony presented at the hearing that he was in great pain at the time of the interrogation and could get medical help and relief from suffering only by confessing, that he was then under the influence of drugs, that he could gain protection for his family only by confessing and that he was tricked by the lie detector operator into confessing. This testimony was presented for the most part by appellant himself and is in direct contradiction to the testimony of the interrogating officers who stated under oath that appellant appeared fully in control of his mental faculties, and expressed no such feeling of pain or concern to them. Their testimony if credited clearly supports the inference that appellant's pain and concern was of insufficient intensity to cause him to make serious complaint and was therefore also insufficient to improperly influence his decision to waive his rights and answer questions. With regard to the use of the lie detector as an interrogation tool, we have observed that it could constitute an improper influence. *Montes v. State*, (1975) 263

Ind. 390, 332 N.E.2d 786. In the present case appellant consented to the test and there is no evidence that it was not given in a proper manner or that the results of it were intentionally misinterpreted. Moreover, the test could not have influenced appellant's decision to relinquish his right to remain silent or to counsel as it took place after that decision was made. Accordingly, the evidence supports the trial judge's conclusion that the waiver and statements were voluntary and admissible. The failure, therefore, to have conducted a hearing outside the presence of the jury and to have made a voluntariness determination was harmless beyond any doubt.

Subject to rehearing, appellant's conviction is affirmed and this appeal terminated.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.