Eddie Lee EDWARDS, Appellant,

v.

STATE of Indiana, Appellee.

No. 975 S 225.

Supreme Court of Indiana.

Nov. 18, 1980.

Stephan J. Lustina, Merrillville, for appellant.

Theo. L. Sendak, Atty. Gen., Wesley T. Wilson, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is an appeal from a conviction for second degree murder. Appellant Edwards received a sentence of life imprisonment.

Among the issues raised in this appeal, he contends that the trial court committed error when it admitted appellant's confession into evidence at trial. Appellant unsuccessfully challenged the admissibility of the confession by way of a motion to suppress and by a subsequent in–trial objection on the basis that the advisement of rights given appellant by the police who interrogated him did not comply with the requirements of *Miranda v. Arizona*, (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and that there had been no valid waiver of rights. The motion was heard prior to trial by a judge who was not the one who ultimately tried the case. At the hearing the judge held to the erroneous view that the burden was upon appellant to sustain his allegations, since a defense motion was being heard. After hearing the testimony of a psychiatrist and the interrogating officer, the court took the motion under advisement and later denied it. Much of the same evidence was developed at trial, and the judge trying the case overruled the in–trial objection to the admission of the confession.

The testimony developed that on October 5, 1973, at about 7:00 a. m., one Joan McCabe was attacked in Hammond, Indiana, and died there in an alley of severe wounds. The presence of the body of the victim was first reported to the local police department by a woman who lived in a nearby house. She had stated that a man had drawn her attention and told her of it. He had said that he was late for work, asked her to report it to the police and left his name and address with her. Appellant was this man. At the time he was a mental patient on leave from a state hospital and employed by the city.

At approximately 10:00 a. m., the police contacted appellant at his work and at their request appellant reported to the police station after work at 4:30 p. m. He was handed a document entitled: "Voluntary Appearance; Advice of Rights" which contained a complete and accurate advisement of rights according to the prescription in *Miranda*, a recital that appellant was appearing voluntarily and was not under arrest, and a waiver statement. Appellant executed the waiver and gave a written statement describing how he had simply come upon the body while walking to work. During this interview appellant told the police that he had been in a psychiatric hospital. He also responded that he would be at a bowling alley that night should they wish to contact him. He then left the police station.

The police then investigated appellant's background and determined that he had been committed to the hospital because of something nebulous to do with a girl. Their suspicions heightened, the officers went to the bowling alley at about 9:00 p. m., confronted appellant and asked him to accompany them. He did so, and while in a police car outside the place, he was given an oral advisement of rights. The sum total of evidence describing this advisement was the testimony of the officer that he "advised him orally of his rights." On the way to the station, they stopped off at appellant's apartment and he got them the clothes he had been wearing that day. They continued on to the station, engaging only in "small talk". The police did not interrogate him until later when he and they were ensconced in the police station. The interrogating officer testified that at the commencement of the interrogation appellant was again "very well advised" of his rights. He added "I told him, 'Eddie you don't have to talk if you don't want to. We are not going to hurt you. I am not going to beat you." This is the sum total of evidence describing the advisement of rights at the station house. The formal stage of the interrogation then commenced. Up to this point in the events of the evening, no express waiver of rights was given by appellant. Nevertheless, the formal stage of the interrogation was commenced.

As appellant prepared to answer their questions, a woman appeared in the door of the interrogation room and said in a voice loud enough for appellant to hear: "Yes, that's the man." Thereupon appellant admitted his guilt for the first time and was subsequently presented and did sign a written waiver of rights containing a complete

advisement of rights. His admission was then put on paper. The officer testified that this woman was in fact a clerk at the police station who had appeared there and uttered those words by pre–arrangement with the interrogators as a ploy. She was not an actual witness, but played the role of an eyewitness engaged in identifying appellant. In regard to the timing of this woman's statement, the following testimony was given:

"Q. And that was the statement that was made before he made any kind of oral statement or written statement?

A. Yes, sir. That was just prior to him making the oral statement. About at nine–thirty."

There are two problems with this case. The first is that the prosecution did not present any evidence of the actual content of the oral advisements given by the officer, but chose to rely instead upon the officer's general answers which variously described the advisement as having been for example "in accordance with the *Miranda* decision."

The question for our decision is whether this evidence is sufficient to satisfy the prosecution's burden to demonstrate a proper advisement before interrogation. The second problem is whether, in light of the false identification of appellant by the policewoman, the State has demonstrated a valid waiver of Fifth and Sixth Amendment rights.

■ The information which must be given to a suspect prior to custodial interrogation is expressly set out in the *Miranda* opinion:

"At the outset, if a person in custody is to be subjected to interrogation, he must first be informed in clear and unequivocal terms that he has the right to remain silent.

\*   \*   \*   \*   \*   \*

"The warning of the right to remain silent must be accompanied by the explanation that anything said can and will be used against the individual in court. This

warning is needed in order to make him aware not only of the privilege, but also of the consequences of foregoing it.

\*   \*   \*   \*   \*   \*

"[W]e hold that an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation. . . .

\*   \*   \*   \*   \*   \*

"[I]t is necessary to warn him not only that he has the right to consult with an attorney, but also that if he is indigent a lawyer will be appointed to represent him.

\*   \*   \*   \*   \*   \*

"The warnings required and the waiver necessary in accordance with our opinion today are, in the absence of a fully effective equivalent, prerequisites to the admissibility of any statement made by a defendant." 384 U.S. at 467–68, 469, 471, 473, 476, 86 S.Ct. at 1624–1627, 1629.

When, as in the case at bar, the issue of the admissibility of the statements of the accused is raised, a heavy burden falls upon the State to demonstrate the required warnings and waivers:

"If the interrogation continues without the presence of an attorney and a statement is taken, *a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self–incrimination and his right to retained or appointed counsel.* . . . This Court has always set high standards of proof for the waiver of constitutional rights . . . and we reassert these standards as applied to in custody interrogation. Since the State is responsible for establishing the isolated circumstances under which the interrogation takes place and has the only means of making available corroborated evidence of warnings given during incommunicado interrogation, the burden is right on its shoulders." (Emphasis added.) 384 U.S. at 475, 86 S.Ct. at 1628.

This Court in *Burton v. State,* (1973) 260 Ind. 94, 292 N.E.2d 790, in furtherance of

the protection to be accorded the Fifth and Sixth Amendments rights of the accused in the interrogation context has established the standard to be applied to this burden of the State to be proof beyond a reasonable doubt. *Craig v. State*, (1980) Ind., 398 N.E.2d 661; *Ortiz v. State*, (1976) 265 Ind. 549, 356 N.E.2d 1188; *Hooker v. State*, (1979) Ind.App., 387 N.E.2d 1354. Applying this standard to the evidence presented which tends to support compliance with *Miranda*, we find that it could not suffice to convince a reasonable trier of fact that the oral advisements were in accordance with the express requirements set down by the United States Supreme Court in *Miranda*. With regard to the first and complete advisement at the police station before the first statement was given, we know that the officer read that advisement from a written form, whereas all we know about the second was that it was orally given. That complete advisement came five hours earlier when appellant was under little suspicion, whereas at the time of the second one, five hours later, he was clearly suspect. There is simply no way to infer the completeness and accuracy of the oral advisement at the bowling alley from the complete advisement five hours earlier.

The general statement by the interrogator in his testimony that he fully advised appellant of his *Miranda* rights does little to fulfill the State's heavy burden. During past years this Court has often litigated the question of the sufficiency of *Miranda* advisements. Never has this Court affirmed the admissibility of a confession upon so little evidence of the specific content of an advisement of rights. Furthermore, the testimony by the interrogator that he told appellant that he need not answer questions is evidence of compliance with the requirement that the suspect be informed of the privilege against self-incrimination, but does not support compliance with the remaining requirements, i. e., that he be told of the consequences of foregoing the privilege, and the right to counsel.

*Avery v. State*, (1976) 265 Ind. 417, 355 N.E.2d 395, is a case worthy of consideration here. In that case the trial judge was under a duty to advise the defendant in a criminal case of the specific rights which were being relinquished by entering a plea of guilty and to make a record of his efforts in that regard. On review the record disclosed only that the defendant had been "instructed as to his constitutional rights". This Court permitted that plea to be withdrawn because the record was inadequate to demonstrate compliance with the duty to advise. And so it is with the case at bar. The record before us provides no assurance that appellant was completely and accurately advised of rights and matters required by the *Miranda* case prior to his admission of guilt upon custodial interrogation, and therefore on this basis alone, the trial court erred in permitting the State to use that admission as evidence of guilt at appellant's trial.

■ This brings us to consideration of the sufficiency of the evidence to support the conclusion that appellant knowingly and intelligently waived his privilege against self-incrimination and his right to counsel. The trick and falsehood employed by the interrogators in having a policewoman walk by the door and say "yes, that's the man", came very shortly after appellant arrived at the interrogation room and prior to any express waiver. A form of this ploy is described in the *Miranda* opinion:

"The interrogators sometimes are instructed to induce a confession out of trickery. The technique here is quite effective in crimes which require identification or which run in series. In the identification situation, the interrogator may take a break in his questioning to place the subject among a group of men in a line-up. 'The witness or complainant (previously coached, if necessary) studies the line-up and confidently points out the subject as the guilty party.' Then the questioning resumes 'as though there were now no doubt about the guilt of the subject.'" 384 U.S. at 453, 86 S.Ct. at 1616–1617.

This type of deception can be used to persuade, trick, or cajole the suspect out of

exercising his constitutional rights. The use of such fraudulent devices underpins the Court's holding that:

"[A]ny evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that defendant did not voluntarily waive his privilege." 384 U.S. at 476, 86 S.Ct. at 1602.

The deception in this case was employed after the oral advisement in the police car and the interrogation room had been given and before a waiver was requested by the interrogators or offered by appellant. At the particular point in time when the deception was employed then, appellant was in the position of having to consider the content of the advisement of rights and to decide whether to relinquish those rights. The deception was successfully employed, as appellant immediately responded to it by admitting his guilt, thereby effectuating in all likelihood a waiver of rights by conduct. *North Carolina v. Butler*, (1979) 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286. According to the *Miranda* opinion deceptive practices of the police must weigh heavily against the State in determining the voluntariness of a waiver of rights. There is further evidence that the interrogators knew that their suspect was a mental patient on furlough at the time from a state hospital. It is just such use of deceptive practices by police interrogators which justifies requiring them to adhere to the procedural safeguards intended to protect the rights of the accused granted by our Constitutions.

Their use in precipitating a waiver of basic rights such as the right to counsel should not be tolerated by any court. As judges we are bound through our oaths to be intolerant of the use of any deception and trick in the custodial interrogation of suspects by the police. And our duty to condemn such practices is even greater where their use communicates with the loss of such basic constitutional rights as the right to counsel or to know that statements can later be used to convict. Upon this record we are bound to conclude that the State has failed to show a voluntary waiver

of the privilege against self-incrimination and the right to counsel, and that by reason thereof also, it was error to admit appellant's confession against him at trial.

The conviction is reversed and a new trial ordered.

HUNTER and PRENTICE, JJ., concur.

PIVARNIK, J., dissents with opinion in which GIVAN, C. J., concurs.

PIVARNIK, Justice, dissenting.

I dissent from the majority opinion in this case. I believe a proper application of our standards of review leads to a conclusion contrary to that reached by the majority. The admissibility of a confession is to be determined by the trial court by examining the totality of circumstances. On appeal, we will review the trial court's determination to determine only whether there was substantial evidence of probative value from which the court could have found beyond a reasonable doubt that the defendant was properly advised of his rights, that he waived his rights, and that the confession was voluntarily given. We will not reweigh the evidence, nor will we disturb a trial court's judgment when it is based upon conflicting evidence. *See, e. g., Holleman v. State*, (1980) Ind., 400 N.E.2d 123; *Richardson v. State*, (1978) 268 Ind. 61, 373 N.E.2d 874. With these principles in mind, I shall examine the majority's opinion and the facts of this case in more detail.

The majority opinion unduly emphasizes the second advisement of rights given to Edwards, and seems to cast off, as unimportant, the first advisement given. I agree that the record reveals precious little *specific* evidence concerning the content of the second advisement. If this had been the *only* set of warnings given, we would possibly be presented with a different case. The fact remains, however, that Officer Mak testified that he did fully advise Edwards of his rights. Nonetheless, as the majority opinion acknowledges, the police clearly advised Edwards of his *Miranda* rights earlier that day. In fact, Edwards executed a waiver of his rights at that time.

The majority distinguishes the two interrogation sessions by pointing out that Edwards was not a "suspect" when the first session took place. In the present context, the fact that he was not a "suspect" at that time is irrelevant. His status as a "non-suspect" does not change the fact that he *was* warned of his constitutional rights and that police took care to obtain a signed waiver of those rights. The police officers' subjective and preliminary assessment of Edwards' possible culpability bears no relation to the completeness of the warnings, nor to the validity of the waiver Edwards executed. Undoubtedly, the two questioning sessions appeared—in their procedure and format—very nearly the same to the key figure: Edwards, who, the record reflects, was very cooperative during both sessions.

By emphasizing that Edwards was not a "suspect" at the time of the first interrogation, the majority implies that this session was something less significant than a "custodial interrogation" under *Miranda*. If the first questioning session was not a "custodial interrogation" then the police officers, by fully advising Edwards of his rights, went further than they were constitutionally required to go; *Miranda's* requirements apply only to "custodial interrogations." The majority now concentrates on the second, apparently incomplete advisement—to the detriment of the first—and thereby holds that there was insufficient evidence to show that Edwards was fully advised of his rights. Under *Miranda* then, the majority would hold the confession was improperly admitted into evidence. Thus, the majority effectively holds that police behavior which affords *greater* protection regarding interrogations than *Miranda* and its progeny require should not be included in the totality of circumstances which the trial court must examine in determining the completeness of the warnings and the validity of the waiver.

If the first questioning session was a "custodial interrogation," then, under *Miranda*, the police were required to advise Edwards of his rights. It is undisputed that they did so. Thus, the requirements of *Miranda* were, in fact, complied with before the confession was obtained. The length of time between Edwards' first waiver and his confession (assuming the second waiver was invalid due to insufficient warnings) is merely one more factor for the trial court to consider. Thus, the majority's conclusion, that "[t]he record before us provides no assurance that appellant was completely and accurately advised of rights and matter required by the *Miranda* case prior to his admission of guilt upon custodial interrogation," is simply not correct.

The requirements of *Miranda v. Arizona,* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, were summarized in that case as follows:

> "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned."

*Id.* at 444–45, 86 S.Ct. at 1612, 16 L.Ed.2d at 706–07.

I do not read *Miranda* or its progeny as requiring a fresh set of warnings prior to each interrogation session, regardless of when or how frequently those sessions occur, and regardless of other circumstances present in the case. Such a *per se* rule would tend to exalt form over substance, and would often produce strange results, as

this case exemplifies. Edwards never indicated "in any manner at any stage of the process" that he did not wish to talk to police or that he wished to talk to an attorney. As the second questioning session began, the police were dealing with an individual who had received the full warnings, had executed a waiver of his rights, and who wished—as he had done all along—to be very cooperative with them. He never indicated that he wished to withdraw the waiver and assert his rights. In the face of these facts, the majority now holds, in effect, that the police were required under *Miranda* to give Edwards this second set of warnings. Even assuming the second set of warnings was inadequate, the majority does not explain why the first set of warnings and Edwards' waiver of his rights were no longer valid when the second session began.

Of course, there could be cases where repeating the advisements would be necessary to insure that the accused is aware of his constitutional rights—for example, if a significant period of time elapsed between the first advisement, waiver, and questioning session, and a subsequent session. I certainly do not place this case in that category. Moreover, such cases would not justify a *per se* rule requiring *Miranda* warnings on each occasion, as the majority appears to be fashioning here. Each case must be decided by examining the *totality* of circumstances.

The majority suggests that giving due weight to the first advisement improperly "infers the completeness and accuracy of the oral [second] advisement." Maj. op. at 226. The first advisement, of course, does nothing of the sort. What it does infer, in looking at all of the facts, is the adequacy of the warnings which were given and the validity of the waiver. The first advisement, which, again, the majority acknowledges was complete under *Miranda*, is one factor which must be considered in examining the totality of circumstances as they were presented to the trial court.

In fact, the first complete advisement, and Edwards' subsequent waiver of his rights, arguably obviated the need for the second advisement, which the majority so methodically criticizes. As argued above, *Miranda* and its progeny do not require that a person must be informed of his right against self–incrimination and his right to counsel each and every time an interrogation session is begun. Of course, the person must be given these warnings before interrogation begins *initially*. Once a person is fully and properly informed of his rights prior to an interrogation session, and barring intervening circumstances or actions by the accused to the contrary (the lack of which in this case having been mentioned elsewhere in this opinion), we should not conclude that those warnings can have no lasting effect whatsoever, and that the failure to again fully advise the person a short time later prior to a second session means that *Miranda* was not followed. Such a failure—even assuming there was a failure in this case—was merely one factor to be examined by the trial court in weighing the totality of circumstances. So it is with the second advisement here. The alleged incompleteness of the warnings given prior to the second questioning session must be balanced along with all other factors. Moreover, we must again remember that the police officer testified that Edwards was very well advised.

We must also keep in mind a number of other facts noted earlier in this opinion. Edwards, after being fully informed of his rights, signed an explicit waiver of those rights. At no time thereafter did he ask that he be allowed to exercise those rights by refusing to talk with police or by requesting a lawyer. See *Michigan v. Mosely*, (1975) 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313; *Miranda v. Arizona, supra*. In fact, his words and actions were to the contrary. See *North Carolina v. Butler*, (1979) 441 U.S. 369, 97 S.Ct. 1755, 60 L.Ed.2d 286. After giving police the first statement, Edwards was allowed to leave, and then told police where he would be that evening in case they wanted to talk further with him. The evidence reveals that Edwards continued to cooperate fully with the police. He was where he said he would be that evening. He willingly gave police the clothes

he had worn that day, and willingly accompanied them to the police station. Even though the specific language used was not repeated in court, the evidence shows the police again orally advised him of his rights. This oral advice was apparently repeated before the second interrogation session began. While this evidence might not, by itself, reveal sufficient evidence of compliance with *Miranda,* this evidence was for the trial court to weigh and consider in light of the complete advisement given to Edwards earlier by the police, and the other facts present here.

The staged identification ploy, while not commendable police behavior, is, again, simply one factor which the trial court was bound to consider in making his judgment. The possible effect of this ploy on Edwards must be judged in light of the rest of the sequence of events. What this sequence of events shows is a totally cooperative individual, not one who was frightened or recalcitrant, *before* this ploy was used. Edwards' willingness to cooperate from the beginning was evidence from which the trial court could have concluded that the ploy did not actually psychologically coerce Edwards and thereby render his waiver ineffectual and his confession involuntary.

We are presented here with a record which reveals conflicting evidence on the questions of the adequacy of the warnings, the validity of the waiver, and the voluntariness of the confession. Faced with such a conflict, we are bound by well-established law to defer to the judgment of the trial court. I believe there was sufficient evidence from which the trial court could have found beyond a reasonable doubt that Edwards was fully advised and warned, that he executed a valid waiver, and that he gave this confession voluntarily. Therefore, I would affirm the judgment of the trial court on this issue and proceed to consider the other issues presented on this appeal.

GIVAN, C. J., concurs.