Charles E. SHANE, Jr., Appellant,

v.

STATE of Indiana, Appellee.

No. 82S00–9210–CR–843.

Supreme Court of Indiana.

June 9, 1993.

Russell T. Woodson, Evansville, for appellant.

Pamela Carter, Atty. Gen. of Indiana and Lisa M. Paunicka, Deputy Atty. Gen., for appellee.

GIVAN, Justice.

Appellant was tried by jury and convicted of Murder and Rape, a Class B Felony. Appellant was sentenced to a term of sixty (60) years for Murder, and twenty (20)

years for Rape, the sentences to run concurrently.

The facts are: On June 1, 1991, appellant went to the home of Gladys Dorsey, his cousin. Appellant was wearing a yellow Adidas T-shirt. He received $20 from Angela Higgins, Dorsey's daughter, for the purpose of purchasing some beer for Dorsey. Higgins left the house to meet a friend. When Higgins returned, she discovered her mother's body on the living room floor with a cord wrapped around her neck. Higgins immediately telephoned the police for assistance.

Officer Stanley Ford of the Evansville Police Department responded to the call and testified that when he arrived at the Dorsey residence Dorsey was dead. Officer Ford testified that he observed that Dorsey was naked and that an electrical cord was wrapped around her neck. Officer Ford also observed feces near the victim's body.

A pathologist, Dr. John Heidingsfelder, who performed an autopsy on Dorsey, observed that Dorsey sustained abrasions near the opening of her vagina which could be consistent with forcible sexual intercourse. He determined that the victim died of asphyxiation brought about by strangulation with a rope.

In the early morning of June 2, 1991, appellant returned to his girlfriend's apartment where he lived. Later that morning appellant's mother called to advise him that the police were looking for him.

The girlfriend, Stephanie Sebree, and appellant went to the Evansville police station where they signed consent to search forms for the apartment. Officers James Van Cleave and Kenneth Burnworth searched the apartment where they found a yellow Adidas T-shirt which appeared to be stained by feces. Alma Daniels, a resident of the apartment complex stopped Officer Burnworth after he had approached his squad car and informed him that she had seen appellant throw a sack in the trash dumpster during the early morning of June 2, 1991. Officer Burnworth proceeded to search the dumpster where he found a sack containing mens' underwear which apparently had been stained with feces.

Officer Burnworth searched the basement of Sebree's apartment building where he found a rifle and a rifle case. It was later determined that the rifle had belonged to the victim.

Officer Richard Reed advised appellant of his *Miranda* rights and appellant signed a waiver of rights form. Appellant informed Officer Reed that when he returned to Dorsey's home he saw someone assaulting Dorsey. He further stated that he grabbed Dorsey's rifle and chased the attacker. Appellant stated that the rifle could be found at his apartment. Appellant subsequently was charged with murder and rape.

Appellant contends the trial court committed reversible error when it denied his challenge of prospective juror Dillon for cause. Appellant used one of his peremptory strikes to remove this juror from the panel.

In response to questioning during *voir dire*, prospective juror Dillon stated that she had been in a car accident involving a drunk driver and that criminal charges were pending against the driver. She further stated that she had filed a civil lawsuit against the driver and that the law firm of Berger & Berger was representing her in that cause of action. The lead prosecutor in the case was a member of that law firm but was not personally participating in the case. The juror stated that she could be a fair and impartial juror.

After this disclosure, appellant challenged prospective juror Dillon for cause. The State objected to the challenge. The trial court sustained the State's objection. Appellant then used a peremptory strike to remove Dillon from the panel.

The grant or denial of a challenge to a juror is within the discretion of the trial court. *Woolston v. State* (1983), Ind., 453 N.E.2d 965. We will interfere in this matter only if the decision is illogical or arbitrary. *Id.*

Appellant is correct that we have held that if an attorney-client relationship exists

between a prosecuting attorney and prospective juror at time of trial, the prospective juror should be disqualified for implied bias. *Klinck v. State* (1932), 203 Ind. 647, 179 N.E. 549.

■ In the case at bar, appellant's challenge for cause was denied, and he used a peremptory challenge to strike the juror. The prejudice he claims he suffered as a result of that unfavorable ruling is that he was forced to use all ten of his peremptory challenges. The peremptory challenge appellant used to remove the juror was not his last peremptory challenge. Further, appellant does not claim that the use of this peremptory challenge precluded him from challenging another juror who later was seated. We have held, in a case similar to the present case, that no reversible error occurs in that situation. *See Woolston, supra.*

If appellant had been forced to accept a juror because of the lack of peremptory challenges left, an issue might have been presented. However, because such a situation did not occur here, we find no reversible error.

Appellant claims the trial court erred by denying his motion to suppress statements made to the police prior to trial. The basis for the motion to suppress was that the statements were not knowingly and voluntarily made because he was not advised of his *Miranda* rights. Following the hearing on the motion, it was denied. When the State moved to introduce the statements, appellant renewed his objection. The statements were admitted at trial.

Appellant does not claim that he never received a *Miranda* warning. He claims that he did not receive the complete warning immediately prior to the first statement.

Appellant voluntarily went to the police station where he was advised of his rights and signed a waiver of rights form. Thereafter, appellant signed a voluntary consent to collection of samples form and a consent to search his apartment form. Appellant was transported to a local hospital where blood and hair samples were taken. Upon returning to the police station, appellant was asked if he still understood his rights, which he answered in the affirmative, and then gave his first statement. Immediately before taking the second statement the officers again asked appellant if he understood his rights.

In order to lay the foundation for admission of the statements, the State had to show that *Miranda* warnings were given and that appellant knowingly and voluntarily waived them. *Dickson v. State* (1988), Ind., 520 N.E.2d 101. Our review involves an examination of the totality of the circumstances to determine whether there was substantial evidence of probative value to support the trial court's finding. *Id.*

Appellant contends that because the *Miranda* warning was given prior to taking the physical samples, the warning did not apply to the statements. However, the following portion of the first voluntary statement indicates otherwise.

"Q: Okay, and, Charles, before we get started here, earlier did Det. Reed read you a copy of Miranda Rights?

A: Yes, he did.

Q: And you understand your rights?

A: Yes, I do.

Q: And did you sign a waiver form stating that you want to talk to us about what you were doing last night?

A: Yes."

■ We have held that after a *Miranda* advisement has been made the advisement need not be repeated if the circumstances surrounding the interruption or adjournment of the process have not deprived the suspect of the opportunity to make an informed and intelligent assessment of his interests involved in the interrogation. *Moredock v. State* (1987), Ind., 514 N.E.2d 1247. The rationale is that if the interruption is part of a continual effort by the police to gather information from the suspect, there can be little doubt as to the suspect's interests in the matter. *Id.*

Appellant relies on the case of *Edwards v. State* (1980), 274 Ind. 387, 412 N.E.2d 223 (Pivarnik, J. dissented with opinion in which Givan, J. concurred), for the proposition that reversible error occurred when

the full *Miranda* advisement was not repeated prior to questioning at the police station. *Edwards* is distinguishable in that although the defendant voluntarily went to the police station, was *Mirandized,* and was questioned, that defendant left police custody, and went to a bowling alley. Police later determined that the defendant was a "suspect" and questioned him a second time. The majority reversed that case, *inter alia,* because of questions concerning the lack of completeness of the readvisement which occurred at the bowling alley prior to the second interrogation.

Examination of the totality of the circumstances leads us to the conclusion that appellant voluntarily appeared at the police station, received the *Miranda* advisement, executed a waiver of those rights without the force of threats, promises, or coercion, consented to providing officials with physical samples, and answered questions upon his return to the police station. The trial court did not err by denying appellant's motion to suppress statements made by him to police officers.

A rifle case and rifle found behind the unhinged door just inside the basement of the apartment complex where appellant lived was admitted into evidence at trial. Appellant made a pretrial motion to suppress the items which was denied. Appellant renewed his objection at trial.

In one of his statements to the police, appellant told the officers that he had taken the victim's rifle with him and had placed it behind the door to the basement at his apartment complex. Appellant claims that the rifle and rifle case should have been suppressed because the search warrant did not cover the basement of the apartment complex and because there was no consent for the search.

■ Appellant did not have a legitimate expectation of privacy in the basement area. The door to the basement area was off its hinge. Access to the basement could be accomplished by descending a stairwell. The storage area was an open area not solely for the benefit of appellant.

The trial court found that the rental agreement signed by appellant stated that certain items could be removed without notice if they were deemed to be unsightly, unsafe or inappropriate.

■ In addition, if there was any error in the admission of the rifle and rifle case it was harmless error. Appellant referred to that evidence in one of the statements he made to police. We have held above that those statements were properly admitted. In that statement, he indicated that the rifle had belonged to the victim, that he had taken the rifle from the victim's house, and that he had later hidden the rifle in the basement of his apartment complex. We have held that the admission of cumulative evidence alone is not grounds for reversal. *Miller v. State* (1989), Ind., 541 N.E.2d 260.

Further, the cause of death of the victim was strangulation. She did not suffer any gunshot wounds. The rifle was not the murder weapon; therefore, it merely connected appellant to the scene of the crime. Appellant already stated that he was at the victim's house on the evening of the crime. Possession of the rifle also tended to corroborate one of his stories that he used the rifle to chase an unknown attacker. The trial court did not err by refusing appellant's motion to suppress.

Appellant claims the trial court erred when it refused his tendered Final Instruction Number Nine. Appellant's tendered instruction reads as follows:

"Human being is defined by statute as an individual who has been born and is alive. In order for a person to be guilty of the crime of Rape, the victim must be alive at the time of the alleged crime. If you find that the State of Indiana has not proven beyond a reasonable doubt that Gladys Dorsey was alive at the time of the alleged Rape in this case, you may not find the defendant guilty of the crime of Rape."

■ Upon review of a trial court's refusal to give a tendered instruction, we look to see if there is evidence to support giving the instruction, whether the instruction is a correct statement of the law, and whether the substance of the instruction is covered by other instructions which are

given at trial. *Hodges v. State* (1988), Ind., 524 N.E.2d 774. Further, an instruction which does not fully and accurately state the law, which would tend to mislead or confuse the jury is properly rejected. *Id.*

Appellant asserts that the State failed to produce any evidence that the victim was alive at the time sexual intercourse occurred; therefore, he was entitled to the instruction.

■ We do not agree that the record is devoid of any evidence that the victim was alive at the time the rape occurred. In his second statement to the police officers, appellant claimed that he saw the victim's body and that her heart was still beating when he left her house. Further, the pathologist who performed the autopsy testified that there were abrasions near the entry of the victim's vagina which could be consistent with violent rape. The victim sustained wounds to her elbow and knee and received a blow to the head. These were all facts from which the jury could infer that there was a struggle.

It is true that the pathologist was unable to conclusively state that the victim in fact was alive when the sexual intercourse occurred. The pathologist testified that the abrasions she received did not typically appear in voluntary intercourse. On cross-examination, he further stated that the abrasions did not conclusively establish "forcible sex" because they might, he conceded, be present in a situation involving "rough sex." Under either scenario, however, the jury could infer that the victim was alive. We agree with the trial court that the evidence did not warrant giving the instruction.

The trial court is affirmed.

SHEPARD, C.J., and DICKSON and KRAHULIK, JJ., concur.

DeBRULER, J., concurs with separate opinion in which KRAHULIK, J., concurs.

DeBRULER, Justice, concurring.

I agree that the prosecution met its heavy burden to prove that appellant's incriminating statements were admissible. With respect to that burden, Justice Hunter said:

> The state, according to *Miranda,* has a "heavy burden ... to demonstrate that the defendant knowingly and intelligently waived his privilege against self incrimination." We have adopted this standard in past decisions. *Nacoff [v. State* (1971), 256 Ind. 97, 267 N.E.2d 165], *supra; Dickerson v. State* (1972), Ind. [257 Ind. 562], 276 N.E.2d 845. The issue, therefore, before this Court, is whether the state met its "heavy burden", i.e., proved beyond a reasonable doubt that the confession was voluntarily given.

*Burton v. State* (1973), 260 Ind. 94, 105, 292 N.E.2d 790, 797–98. *See also Magley v. State* (1975), 263 Ind. 618, 335 N.E.2d 811; *Reaves v. State* (1992), Ind., 586 N.E.2d 847. In this case, appellant Shane appeared at the station house at about 9:00 a.m. The record discloses that he was read the following required *Miranda* advisements:

> You have the right to remain silent.
> Anything you say can and will be used against you in a court of law.
> You have the right to talk to a lawyer and have him present with you while you are being questioned.
> If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning, if you wish.
> You can decide at any time to exercise these rights and not answer any questions or make any statements.

Appellant then signed a written waiver that was at the bottom of the paper upon which the above advisements were printed:

> I have read the above statement of my rights and I understand each of those rights, and having these rights in mind I waive them and willingly make a statement.

He then signed a consent to search and was taken to a hospital for the purpose of taking various physical specimens from his body. At 11:00 a.m., while still in the company of police, appellant was placed in custody. He was subjected to two interrogation sessions, one at 11:00 a.m. and another

at 2:00 p.m. the same day. Before each of the two sessions, he was reminded of the prior reading of advisements and said that he still understood his rights, and answered questions without coercion. I agree that from this set of circumstances the trial court was warranted in concluding beyond a reasonable doubt that at 9:00, appellant knowingly and voluntarily relinquished his rights to remain silent and to have counsel, and that such relinquishment occurred again prior to each interrogation. The manner in which the majority opinion distinguishes this situation from that present in *Edwards v. State* (1980), Ind., 274 Ind. 387, 412 N.E.2d 223 is entirely appropriate.

KRAHULIK, J., concurs.