**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**LEANNA WEISSMANN**
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JASON HALCOMB, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 69A01-1306-CR-280 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE RIPLEY CIRCUIT COURT
The Honorable Carl H. Taul, Judge
Cause No. 69C01-1202-FA-2

**January 24, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Jason Halcomb appeals his convictions for two counts of Class A felony child molesting. We affirm.

**Issues**

Halcomb raises two issues, which we restate as:

  I.    whether the trial court properly admitted his statements to the police into evidence; and

  II.   whether his forty-year sentence is inappropriate.

**Facts**

C.C. was born in July 1997. In 2005, eight-year-old C.C. lived with her mother, her sibling, and her mother's boyfriend, Halcomb. Halcomb's daughter, B.H., stayed at the same residence on the weekends. When C.C. started second grade, C.C.'s mother was working an early shift, and Halcomb would get C.C. ready for school. Halcomb started molesting C.C. while he was getting her ready for school. Halcomb made C.C. touch his penis with her hand about five times and touch his penis with her mouth about three times. Halcomb also placed his fingers in her vagina. In November 2006, C.C. told her mother about the molestations. Halcomb moved out in February 2007.

On November 9, 2011, while investigating an unrelated matter, Detective Glenn Potts with the Indiana State Police was informed of the molestation by B.H. Detective Potts asked Halcomb to pick up B.H. at the State Police Post. When Halcomb arrived, Detective Potts asked to interview him, and Halcomb agreed. Detective Potts advised Halcomb of his Miranda rights, and Halcomb signed a waiver of his rights. Detective

2

Potts told Halcomb that he was not under arrest and that he could leave at any time. Detective Potts asked Halcomb whether he touched C.C. in an inappropriate manner, and Halcomb told Detective Potts that "he could not remember doing anything like that." Tr. p. 140. Halcomb also said "he was sorry if he did touch her in an inappropriate manner but he did not intend to do it." Id. at 141. The interview lasted approximately one hour, and Halcomb then left the building.

On February 2, 2012, Halcomb agreed to take a polygraph examination. Sergeant Delmar Gross advised Halcomb of his Miranda rights and administered the polygraph. After the polygraph examination, Halcomb got upset and left. Detective Potts went to the parking lot, and Halcomb was in his truck. Detective Potts asked to talk to Halcomb, and Halcomb said that he was hungry. Detective Potts told Halcomb that he would be at the State Police Post for two or three hours and that Halcomb could come back after eating if he wanted to do so. Detective Potts then started walking back into the building, and Halcomb parked his vehicle and said, "let's do it now." Id. at 104.

During the interview, Detective Potts implied to Halcomb that there was a difference between C.C. voluntarily placing her mouth on his penis and Halcomb forcing C.C. to do so. Eventually, Detective Potts said:

> OFFICER: Then that's what I have got to know how did her mouth get on the penis? Did she come and play with you and you let her play around and she took out, maybe seen her mother do this before, and maybe her doing it?
>
> DEFENDANT: Yeah. I will stick with that.
>
> OFFICER: No. I want the truth though.

3

DEFENDANT: I believe that is the truth.

OFFICER: Well, did she suck your penis?

DEFENDANT: She kissed it.

OFFICER: She kissed it?

DEFENDANT: Yeah.

Id. at 147-48. Halcomb eventually claimed that C.C. had touched his penis with her mouth three or four times, that she had part of it inside her mouth, that he was aroused, that he put his hand on her buttocks, and that she initiated the contact. The polygraph examination plus the interview lasted approximately four hours. After the interview, Halcomb left the building and was not arrested at that time.

Later, the State charged Halcomb with two counts of Class A felony child molesting. At the jury trial, Halcomb objected to the admission of his two statements to Detective Potts. The trial court overruled Halcomb's objections and admitted the two statements. The jury found Halcomb guilty as charged. At the sentencing hearing, the trial court considered Halcomb's position of trust as an aggravator. The trial court also noted Halcomb's criminal history and "disregard for the authority of the Court . . . to bring him to justice." Id. at 241. The trial court sentenced Halcomb to forty years for each conviction to be served concurrently. Halcomb now appeals.

**Analysis**

*I. Statements to Police*

Halcomb argues that the trial court abused its discretion by admitting the November 9th statement and the February 2nd statement. Halcomb argues that the waiver

4

of his <u>Miranda</u> rights was involuntary and that his confessions were involuntary under both the United States Constitution and the Indiana Constitution. If a defendant challenges the waiver of his rights under <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S. Ct. 1602 (1966), or the voluntariness of a confession under the United States Constitution, the State must prove the statement was voluntarily given by a preponderance of the evidence. <u>Pruitt v. State</u>, 834 N.E.2d 90, 114 (Ind. 2005), <u>cert. denied</u>. However, the Indiana Constitution requires the State to prove "'beyond a reasonable doubt that the defendant voluntarily waived his rights, and that the defendant's confession was voluntarily given.'" <u>Id.</u> at 114-15 (quoting <u>Miller v. State</u>, 770 N.E.2d 763, 767 (Ind. 2002)).

### A. Waiver of <u>Miranda</u> Rights

Halcomb first argues that the waiver of his <u>Miranda</u> rights was involuntary under the United States Constitution and the Indiana Constitution. In response, the State argues that Halcomb was not in custody during either interview and that <u>Miranda</u> warnings were not required. Alternatively, the State argues that, even if <u>Miranda</u> warnings were required, Halcomb voluntarily waived his <u>Miranda</u> rights. We need not determine whether Halcomb was subject to custodial interrogations because, even if he was, the waiver of his <u>Miranda</u> rights was voluntary.

A waiver of <u>Miranda</u> rights occurs when the defendant, after being advised of those rights and acknowledging that he understands them, proceeds to make a statement without taking advantage of those rights. <u>Ringo v. State</u>, 736 N.E.2d 1209, 1211-12 (Ind.

5

2000). Whether a proper waiver of <u>Miranda</u> rights has occurred depends on whether the waiver was made voluntarily and was not induced by violence, threats, or other improper influences that overcame the defendant's free will. <u>Id.</u> at 1212. Thus, the voluntariness of a defendant's waiver of rights is judged by the totality of the circumstances. <u>Id.</u>

With respect to the November 9th statement, Halcomb argues that the "tiny" interview room and the one hour "intense" interrogation overcame his free will. Appellant's Br. p. 9. When Halcomb arrived at the State Police Post to pick up his daughter, Detective Potts asked if he could interview Halcomb. Halcomb, who was a former military police officer, agreed and signed a waiver of his <u>Miranda</u> rights at the beginning of the interview. "[A] signed waiver form is one item of evidence showing that the accused was aware of and understood his rights." <u>Allen v. State</u>, 686 N.E.2d 760, 770 (Ind. 1997), <u>cert. denied</u>. There is no evidence that Halcomb did not understand his rights or the waiver. Further, a ten-foot by ten-foot room is not particularly small, and its use for the interview is simply insufficient to demonstrate that Halcomb's waiver was involuntary. Halcomb also argues that he was subjected to a one-hour intense interview. However, he does not demonstrate how the interview retroactively made his prior waiver involuntary. There is simply no evidence of violence, threats, promises, or improper influence with respect to Halcomb's waiver of his <u>Miranda</u> rights on November 9th. Halcomb's arguments fails.

As for the February 2nd statement, Halcomb argues that he did not sign a waiver prior to Detective Potts's interview of him, that he was questioned "vigorously," and that he was misled into believing that the seriousness of the allegations would be reduced if

6

C.C. initiated the contact. Appellant's Br. p. 10. According to Halcomb, those factors overcame his will. Halcomb arrived at the State Police Post on February 2nd to participate in a polygraph examination by Sergeant Gross. Prior to the polygraph examination, Halcomb was advised of his Miranda rights and signed a waiver of those rights. Halcomb makes no argument that this waiver was improper in any way. After finishing the polygraph examination, Halcomb left the building. Detective Potts approached Halcomb's vehicle in the parking lot and asked to talk to Halcomb. Halcomb said that he was hungry, and Detective Potts told Halcomb that he would be at the State Police Post for two or three hours and Halcomb could come back after eating if he wanted to do so. Detective Potts then started walking back into the building, and Halcomb parked his vehicle and said, "let's do it now." Tr. p. 104. Detective Potts then interviewed Halcomb.

According to Halcomb, he did not sign a written waiver of his Miranda rights before the interview with Detective Potts. However, Halcomb had already signed a written waiver that morning prior to talking with Sergeant Gross. Halcomb cites no authority for the proposition that the prior written waiver was somehow invalid. In fact, our supreme court has held that "after a Miranda advisement has been made the advisement need not be repeated if the circumstances surrounding the interruption or adjournment of the process have not deprived the suspect of the opportunity to make an informed and intelligent assessment of his interests involved in the interrogation." Shane v. State, 615 N.E.2d 425, 427 (Ind. 1993). "The rationale is that if the interruption is part of a continual effort by the police to gather information from the suspect, there can be

little doubt as to the suspect's interests in the matter." Id. It was unnecessary for Detective Potts to repeat the advisement and obtain another written waiver under these circumstances.

As for Halcomb's argument that Detective Potts questioned him vigorously and misled him about the seriousness of his conduct, again, those allegations relate to conduct after Halcomb had already waived his Miranda rights. Those allegations do not affect the validity of his prior waiver. There was no evidence of violence, threats, promises, or improper influence related to Halcomb's waiver. The trial court properly concluded that Halcomb knowingly, intelligently, and voluntarily waived his Miranda rights on both November 9th and February 2nd.

### B. Voluntariness of Confession

Next, Halcomb argues that his statements on both November 9th and February 2nd were involuntary under both the United States Constitution and the Indiana Constitution. "A confession is voluntary if, in light of the totality of the circumstances, the confession is the product of a rational intellect and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will." Ringo, 736 N.E.2d at 1212. "The critical inquiry is whether the defendant's statements were induced by violence, threats, promises, or other improper influence." Id. at 1212-13. In evaluating a claim that a statement was not given voluntarily, the trial court is to consider the totality of the circumstances, including: "the crucial element of police coercion, the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical condition, and mental health." Pruitt, 834 N.E.2d at 115

8

(quoting Miller, 770 N.E.2d at 767).  On appeal, we do not reweigh the evidence.  Id.  We examine the record for substantial, probative evidence of voluntariness.  Id.  We review the evidence most favorable to the State, together with the reasonable inferences that can be drawn therefrom.  Id.  If there is substantial evidence to support the trial court's conclusion, it will not be set aside.  Id.

With regard to the November 9th statement, Halcomb again argues that the small room and the vigorous interrogation overcame his free will.  A ten-foot by ten-foot room is not particularly small, and the fact that the interview was conducted in that room is clearly not sufficient to make his confession involuntary.  Also, there is no indication that the interview involved coercion, and the interview only lasted for one hour.  The trial court properly admitted Halcomb's November 9th statements to Detective Potts under both the United States Constitution and the Indiana Constitution.

As for the February 2nd statement, Halcomb argues that he did not confess until after four hours of interrogation and that he was misled into admitting that C.C. initiated the contact.  Halcomb voluntarily agreed to undergo a polygraph examination, and after finishing the examination, Detective Potts asked to speak to him.  Halcomb voluntarily talked to Detective Potts for approximately an hour.  In talking to Halcomb, Detective Potts gave the impression that there was a difference between Halcomb forcing C.C. to touch his penis and C.C. voluntarily doing so.  Police deception does not automatically render a confession inadmissible.  Miller, 770 N.E.2d at 767 n.5.  Our supreme court has held that police deception during an interview is only one factor to consider in the totality of the circumstances.  Id.  "[S]ubterfuge, trickery, and deception can be acceptable

9

interrogation tactics." Hartman v. State, 988 N.E.2d 785, 790 (Ind. 2013). "Various interrogation techniques—'good cop, bad cop,' providing a morally acceptable answer, blaming the victim, and bargaining—do not necessarily create an involuntary statement." Wilkes v. State, 917 N.E.2d 675, 681 (Ind. 2009), cert. denied. Detective Potts did not tell Halcomb that C.C. voluntarily touching his penis was not a crime. Rather, he offered Halcomb various explanations as to how the events could have occurred and implied that the use of force would be worse. This interrogation technique did not necessarily create an involuntary statement.

Under the totality of the circumstances, we conclude that Halcomb's confession was voluntary. Halcomb had the opportunity to leave the State Police Post after the polygraph interview. Instead, he said that he wanted to talk with Detective Potts. Halcomb, a former military police officer, should have been aware that his conduct with an eight-year-old child was a criminal offense regardless of whether C.C. was forced. There is no evidence of coercion, and the confession was admissible under the United States Constitution. Further, we conclude that the State met its burden of proof by showing that Halcomb's confessions were voluntary even under the stricter standard for the Indiana Constitution.

## II. Sentence

Halcomb argues that his sentence is inappropriate in light of the nature of the offense and the character of the offender. Indiana Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense

10

and the character of the offender. When considering whether a sentence is inappropriate, we need not be "extremely" deferential to a trial court's sentencing decision. Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). Still, we must give due consideration to that decision. Id. We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. Id. Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest— the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." Id. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. Davidson v. State, 926 N.E.2d 1023, 1025 (Ind. 2010).

Halcomb asks that we resentence him to minimum, concurrent twenty-year sentences. Regarding the nature of the offense, Halcomb argues that his offense did not involve "violence, weapons, or force" and that he did not threaten C.C. Appellant's Br. p. 22. However, our supreme court has held that the absence of physical harm does not require a reduced sentence. Neal v. State, 826 N.E.2d 635, 637-38 (Ind. 2005). Our

11

review reveals that, while Halcomb was supposed to be getting eight-year-old C.C. ready for school because her mother worked an early shift, Halcomb started molesting C.C. Halcomb made C.C. touch his penis with her hand and touch his penis with her mouth several times. Halcomb also placed his fingers in her vagina. C.C.'s letter to the trial court at sentencing demonstrated the ongoing emotional harm she suffered as a result of Halcomb's actions. Halcomb was in a position of trust and repeatedly violated that trust.

With respect to Halcomb's character, he argues that "a person never before sent to prison should be able to be rehabilitated by the end of the minimum sentence." Appellant's Br. p. 24. Halcomb bases this argument on his criminal history, which includes a Class A misdemeanor conviction for domestic battery and a pending charge for Class D felony criminal recklessness for discharging an AK-47 rifle and a revolver in the direction of a residential area and a State Road. His criminal history is not extensive, but we find other factors more persuasive here regarding Halcomb's character. In particular, we note that Halcomb continues not to accept responsibility, despite his confession. The fact that Halcomb blames an eight-year-old child and claims that she initiated the sexual contact with him does not speak well for his character. In the presentence investigation, Halcomb blamed C.C., the police, and the media. Given Halcomb's violation of his position of trust and his continuing denial of any responsibility, we conclude that the forty-year sentence is not inappropriate.

## Conclusion

The trial court properly admitted Halcomb's November 9th and February 2nd statements, and his sentence is not inappropriate in light of the nature of the offenses and the character of the offender. We affirm.

Affirmed.

ROBB, J., concurs.

BROWN, J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

JASON HALCOMB,          )
                            )
     Appellant-Defendant,    )
                            )
         vs.             )     No. 69A01-1306-CR-280
                            )
STATE OF INDIANA,     )
                            )
     Appellee-Plaintiff.     )

**BROWN, Judge, dissenting**

I respectfully dissent from the majority opinion that Halcomb's sentence is not inappropriate in light of the nature of the offenses and his character. Halcomb's offenses did not involve intercourse or the use of violence, a weapon, or threats, and did not result in physical injury. Moreover, the presentence investigation report ("PSI") shows that Halcomb's criminal history is minimal, with one prior misdemeanor conviction and a pending class D felony charge. The PSI further states that Halcomb was gainfully employed as a shop boss making $26.00 per hour and had been since 2001, and that he had previously worked for the same employer as a teenager. Halcomb also served in the military for four years. He had never before been sent to prison, he scored in the low

14

category for criminal attitudes and behavioral patterns, and his overall risk assessment score under the Indiana Risk Assessment System Community Supervision Tool places him in the low risk to reoffend category. Halcomb is thirty-five years old and, because he is a credit restricted felon, will be required to serve approximately 87.5% of his sentence even with good time credit. See Sharp v. State, 970 N.E.2d 647, 650 (Ind. 2012) (holding that credit time status may be considered by an appellate court exercising its review and revise authority); Ind. Code § 35-50-6-3 (setting forth the credit time structure based on class and providing that a person assigned to Class IV "earns one (1) day of credit time for every six (6) days the person is imprisoned for a crime or confined awaiting trial or sentencing"); Ind. Code § 35-50-6-4(b) (providing that a person who is a credit restricted felon is initially assigned to Class IV).

For the foregoing reasons, I would find Halcomb's sentence is inappropriate and remand for resentencing to a term no greater than the advisory term for a class A felony with a portion suspended to supervised probation to assist with successful reentry into society.