Jeramy HEAVRIN, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 22S00–9505–CR–550.

Supreme Court of Indiana.

Dec. 31, 1996.

Rehearing Denied May 2, 1997.

Steven A. Gustafson, New Albany, for Appellant.

Pamela Carter, Attorney General, James A. Joven, Deputy Attorney General, Indianapolis, for Appellee.

SULLIVAN, Justice.

Defendant Jeramy Heavrin was found guilty of Murder[1] for the strangulation death of Jennifer Johnson. Defendant was sentenced to sixty years in jail.[2]

## Background

On July 11, 1994, defendant entered Johnson's home and strangled her to death. Defendant claimed that he went to Johnson's home to ask her out on a date, that she vehemently protested his proposal and that a physical altercation between the two broke out as a result. Defendant claimed that during the fight, Johnson's shirt got wrapped around her neck and he accidentally strangled her. After hearing the evidence presented at trial, the jury did not agree with defendant's claim that he accidentally strangled Johnson and found him guilty of Murder.

## Discussion

### I

Defendant first claims that the trial court committed reversible error when it failed to instruct the jury on the lesser included offense of Reckless Homicide.[3]

During trial, defendant requested a proposed instruction on the lesser included offense of Reckless Homicide. The trial court rejected this request, but did instruct the jury on Murder, Voluntary Manslaughter, Aggravated Battery, Involuntary Manslaughter, Battery, and Criminal Recklessness. Defendant claims the trial court's failure to instruct the jury on Reckless Homicide is in direct conflict with our recent holding in *Wright v. State*, 658 N.E.2d 563 (Ind.1995).

In *Wright*, we affirmed the trial court's conviction of defendant for Reckless Homicide, a lesser included offense of Murder. In so holding, we set forth a three step analysis to determine whether a jury should be instructed on a lesser included offense. The three step analysis is as follows:

First, a trial court must compare the statute defining the crime charged with the statute defining the alleged lesser included offense. If (a) the alleged lesser included offense may be established "by proof of the same material elements or less than all the material elements" defining the crime charged ... or (b) the only feature distinguishing the alleged lesser included offense from the crime charged is that a lesser culpability is required to establish the commission of the lesser offense ...

---

1. Ind.Code § 35–42–1–1 (1993).

2. Although the murder at issue here occurred during the time period addressed by our opinion in *Joshua P. Smith v. State*, 675 N.E.2d 693 (Ind.1996), we find nothing in the record to suggest, and defendant does not contend, that the trial court used the wrong sentencing statute.

3. Ind.Code § 35–42–1–5 (1993) provides: "A person who recklessly kills another human being commits reckless homicide, a Class C felony."

then the alleged lesser included offense is *inherently* included in the crime charged. If an offense is inherently included in the crime charged, then a trial court should proceed to step three below. . . .

Second, if a trial court determines that an alleged lesser included offense is not inherently included in the crime charged under step one, then it must compare the statute defining the alleged lesser included offense with the charging instrument in the case. If the charging instrument alleges that the means used to commit the crime charged include all of the elements of the alleged lesser included offense, then the alleged lesser included offense is *factually* included in the crime charged, and the trial court should proceed to step three below. *Lynch v. State* (1991), Ind., 571 N.E.2d 537, 538. If the alleged lesser included offense is neither *inherently* nor *factually* included in the crime charged, then the trial court should not give a requested instruction on the alleged lesser included offense. *See Straub v. State* (1991), Ind., 567 N.E.2d 87, 90.

Third, if a trial court has determined that an alleged lesser included offense is *either* inherently *or* factually included in the crime charged, it must look at the evidence presented in the case by both parties. If there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense and if, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater, then it is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense. *Aschliman [v. State]*, 589 N.E.2d [1160] at 1162 [(Ind. 1992)]; *Lynch,* 571 N.E.2d at 539. If the evidence does not so support the giving of a requested instruction on an inherently or factually included lesser offense, then a trial court should not give the requested instruction.

*Wright,* 658 N.E.2d at 567.

■ Reckless Homicide is an inherently included offense of Murder. *Wright,* 658 N.E.2d at 567. Thus, under the *Wright* analysis, a Reckless Homicide instruction would have been necessary if there was a serious evidentiary dispute about the elements distinguishing Murder from Reckless Homicide and if, in view of this dispute, a jury could conclude that Reckless Homicide was committed but not Murder. Here the important question is whether or not there was a serious evidentiary dispute as to whether defendant strangled Johnson recklessly but not knowingly. Defendant claims this issue was seriously in dispute as defendant always claimed that he merely accidentally strangled Johnson and no eyewitnesses were presented to claim anything to the contrary. The state argues in response that the evidence did show that defendant knowingly strangled Johnson as defendant told police that he "choked" Johnson.

Though not entirely free from doubt, we agree with the state that the evidence was substantial enough to support the trial court's refusal to give the reckless homicide instruction.

Reckless homicide is a killing committed with a plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct. Ind. Code § § 35–42–1–5 and 35–41–2–2(c). Murder, on the other hand, requires as a minimum a killing committed by a perpetrator who engaged in the killing with an awareness of a high probability that he was doing so. Ind.Code §§ 35–42–1–1 and 35–41–2–2(b). Thus, an instruction on reckless homicide was not warranted if there was no serious evidentiary dispute but that defendant committed the attacks with an awareness of a high probability that he was engaged in killing. *Ingram v. State,* 547 N.E.2d 823, 829–830 (Ind.1989). We find that the defendant's statement to the police that he choked Johnson with her T-shirt, the fact that ligature strangulation was the cause of death, and the other evidence at trial concerning the choking and strangulation, gave the trial court sufficient justification to conclude that there was no serious evidentiary dispute that the defendant was acting with an awareness of a high probability that he was engaged in killing.

## II

Defendant claims that the evidence presented at trial was insufficient to establish that he knowingly or intentionally killed Johnson.

■ When reviewing the sufficiency of evidence establishing the elements of a crime—including the intent element—we consider only the evidence supporting the verdict along with any reasonable inferences drawn from that evidence. *Johnson v. State,* 584 N.E.2d 1092, 1101 (Ind.1992). On review we will not reweigh evidence or judge the credibility of witnesses. *Lay v. State,* 659 N.E.2d 1005, 1013 (Ind.1995). "If there is substantial evidence of probative value from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt, we will affirm." *Id.* (citing *Garrett v. State,* 602 N.E.2d 139, 142 (Ind.1993)).

■ A person acts intentionally if "when he engages in the conduct, it is his conscious objective to do so." Ind.Code § 35–41–2–2(a) (1993). A person acts knowingly if "when he engages in the conduct, he is aware of a high probability that he is doing so." Ind.Code § 35–41–2–2(b). Intent and knowledge may be proved by circumstantial evidence and inferred from the circumstances and facts of each case. *Mitchell v. State,* 557 N.E.2d 660, 664 (Ind.1990). Also, one is presumed to have intended the reasonable results of his or her own acts. *Johansen v. State,* 499 N.E.2d 1128, 1132 (Ind.1986).

■ Consistent with our analysis of the reckless homicide instruction issue, we think that the jury here could have reasonably inferred from the evidence presented that defendant knowingly or intentionally stran-gled Johnson, despite the fact that defendant claims that he accidentally strangled her. The jury easily could have concluded that defendant was aware of the high probability that physically fighting with Johnson while her "shirt was wrapped around her neck" (as defendant claims) could result in strangulation. *See Bryan v. State,* 450 N.E.2d 53, 63 (Ind.1983) (jury could reasonably conclude that defendant was aware of high probability that placing wire around victim's neck would result in her death). Applying the standard of review as discussed above for sufficiency of the evidence claims, we conclude that defendant's argument that there was insufficient evidence to find him guilty of Murder is without merit.

## III

Defendant claims that the trial court erred in admitting several statements that defendant gave to police.

Defendant made three statements to the police that were admitted at trial. The first statement was given to police on July 11, 1994. On that evening, defendant went to the police department to report that he had chased several individuals from his house that morning. Before giving police his full statement regarding this incident, defendant was advised of his *Miranda* rights and then signed a waiver of rights form.[4] Afterwards, defendant gave his statement regarding this alleged incident, which the police tape recorded. Defense counsel objected to the admittance of this taped statement at trial on the basis that it was not made knowingly or intelligently because defendant was not made aware at that time that he was considered a suspect in the death of Johnson and that it was made under the threat of inducement.

---

4. The waiver of rights form stated:
 *Before we ask you any questions, you must understand your right.*
 You have the right to remain silent.
 Anything you say can be used against you in court.
 You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.
 If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.
 If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.
 Waiver of Rights
 I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me. (R. 777) This form was signed by defendant.

The judge overruled defendant's objection and admitted the statement. It does not appear that defendant argues on appeal that this July 11 statement was wrongly admitted. However, defendant clearly contends that two other statements were wrongly admitted as involuntary confessions.

 Three days after defendant went to the police station to report the incident involving the persons that he chased away from his house, defendant was arrested. It was on this day (July 14) that defendant made the two other statements that defendant contends that the trial court should not have admitted. The first July 14 statement was one made by defendant after he was given a polygraph examination [5] at the state troopers' office in Sellersberg. Like defendant's statement on July 11, defendant signed a waiver of rights form, which included a statement of his *Miranda* rights, before giving the statement. *See* footnote 3, *supra*, for content of waiver of rights form. Also, defendant was asked if he understood his rights and defendant responded that he did. Defendant then gave his statement in which he initially contended that on the night of Johnson's death, he did not enter her house, but merely looked into her window and observed her lying on her bed. After hearing this statement, the officer who conducted the interview told defendant that he "felt like that he [defendant] was, in fact, in the house and that I [officer] thought that there was physical evidence that was going to prove that he [defendant] was in the house...." Defendant then admitted to the officer that he was in Johnson's home on the night in question, but that she let him in voluntarily. Defendant then stated that he wanted to get his wife and the same officer who conducted the interview replied that he "didn't know why he would want to go get his wife, because she had had several affairs on him, as he had told me previously in our interview." Then defendant began crying and admitted that he entered Johnson's home and fought with her and accidentally choked her.

Defendant claims that the trial court should not have admitted this first July 14 statement because the officer lied to defen-

dant in stating that there was evidence to place defendant at the scene of the crime, making any subsequent confession involuntary. Defendant cites to cases such as *Lynch v. State,* 632 N.E.2d 341 (Ind.1994) and *Edwards v. State,* 274 Ind. 387, 412 N.E.2d 223 (Ind.1980), claiming that they hold that deception of an accused may render his or her confession involuntary.

In *Lynch,* we addressed a situation where a police officer misled the defendant about the meaning and consequences of waiver while defendant was being questioned about his involvement in the crime. After the defendant expressed interest in not wanting to waive his rights, the officer continued to ask defendant about what he did on the night of the crime. We concluded that this essentially constituted the police officer misleading the defendant regarding the meaning and consequences of waiver and held that this rendered the subsequent confession inadmissible. 632 N.E.2d at 344. In so holding, we stated that in reviewing whether or not a statement was made voluntarily, we must consider the "totality of the circumstances." 632 N.E.2d at 343.

In *Edwards,* we addressed a situation where the defendant confessed to a murder after the police orchestrated a situation where a fellow officer walked by defendant and stated "that's the man." We held that this deception, which occurred before defendant waived his *Miranda* rights, rendered defendant's confession involuntary. 412 N.E.2d at 227. In so holding we stated, "According to the *Miranda* opinion deceptive practices of the police must weigh heavily against the State in determining the voluntariness of a waiver of rights." *Id.*

 Reading *Lynch* and *Edwards* together, we look at the totality of the circumstances surrounding defendant's statements and note that deception on the part of police officers will weigh heavily against the voluntariness of defendant's statements. In applying the law of *Lynch* and *Edwards* here, we conclude that defendant's first July 14 statement was made voluntarily. First, we note there are some important differences

---

**5.** The results of the polygraph examination were not admitted into evidence at trial.

between the facts here and the facts in both *Lynch* and *Edwards*. Defendant's statement was made after he signed a waiver of rights form, which is different from the situation in *Edwards*. And defendant had already signed the form before the officer allegedly deceived defendant, which is different from *Lynch*. Second, as we already noted, defendant signed a waiver of rights form, providing some indication that defendant's statement was made voluntarily. There is no evidence that defendant signed this form under any threats of violence, promises or coercion. Finally, we cannot conclude that the questioning officer here actually deceived defendant, as defendant alleges. The officer did not tell defendant that he had evidence to prove defendant was at Johnson's home. Instead, he told defendant that based on the statement he had just heard, he *"felt* that there *was going to be* physical evidence that was recovered at the crime scene that was *probably* gonna place him in the house ..." This amounts to an opinion by the officer that he had a suspicion that defendant was involved in Johnson's death; it was not a representation that the police had positively obtained evidence placing defendant at the scene of the crime. Therefore, the officer did not engage in deceit to elicit defendant's confession. Cases such as *Edwards* and *Lynch* do not apply to the facts here.

Defendant also claims that the officer's reference to defendant's wife's infidelities rendered his subsequent statement involuntary. Defendant, however, does not explain why this is the case and we do not see an apparent explanation as to why this comment would render defendant's statement involuntary. We conclude that the trial court properly admitted defendant's first July 14 statement.

Defendant made a second statement on July 14, which he also claims should not have been admitted at trial. After defendant broke down during the interview discussed above and confessed that he was actually in Johnson's home the night of her murder, the officer who conducted that interview informed three other detectives of defendant's statement. The detectives then brought defendant to the Floyd County prosecutor's office where they could interview defendant on tape. Before commencing the interview on tape, one of the officers advised defendant that he had the same rights that they had discussed before he made his first statement that day. Defendant replied that he was willing to make a statement. Also, during defendant's recorded statement, he acknowledged that he had been advised of his rights by the officer who conducted the first interview. Defendant did not sign another waiver of rights immediately before this last statement. In this second July 14 statement, defendant again admitted to the officers that he had been in Johnson's home on the night of her death and that he had accidentally choked her during a physical altercation.

Defendant claims that this last statement should not have been admitted because he was not properly advised of his *Miranda* rights before this statement was made. The state counters that the waiver of rights form signed on the same day before the first statement was made in addition to the reminder to defendant of his rights before the second statement on July 14 was made are sufficient to satisfy *Miranda* requirements. The state cites as support for its position our opinion in *Shane v. State*, 615 N.E.2d 425, 427 (Ind. 1993), which held that police are not required to explicitly re-read *Miranda* warnings in some cases where there is an interruption.

In *Shane*, defendant was advised of his *Miranda* rights upon arriving at the police station. He then signed a voluntary consent to collection of samples form and was taken to a local hospital for collection of samples. After returning to the police station, defendant was asked if he continued to understand his rights, which he said he did, and then gave a statement. Defendant claimed on appeal that his statement should not have been admitted at trial because he was not read his *Miranda* rights immediately prior to giving his statement. This court held that the *Miranda* advisement did not need to be repeated "if the circumstances surrounding the interruption or adjournment of the process have not deprived the suspect of the opportunity to make an informed and intelligent assessment of his interests involved in the interrogation." 615 N.E.2d at 427 (citing

*Moredock v. State,* 514 N.E.2d 1247 (Ind. 1987)). We supported this reasoning by stating that "[t]he rationale is that if the interruption is part of a continual effort by the police to gather information from the suspect, there can be little doubt as to the suspect's interests in the matter." *Id.*

As in *Shane,* the interruption here was "part of a continual effort by the police to gather information." The interruption was simply to get defendant to a place where his statement could be recorded. It was not a situation where defendant left the station and went somewhere on his own not related to the interrogation and then came back for further questioning. *See, e.g., Edwards,* 274 Ind. 387, 412 N.E.2d 223 (reversible error when *Miranda* rights not repeated prior to second questioning, where defendant left station and went to bowling alley before second questioning). Also, again like in *Shane,* defendant was reminded of his rights right before being questioned the second time, and defendant responded that he understood his rights. We think defendant's second statement to the police was made voluntarily and that it was properly admitted.

### IV

Defendant next claims that certain of the state's comments to the jury were improper and constituted prosecutorial misconduct. Such comments included that "murderers do what they can to cover evidence" and "hide evidence." However, defendant concedes that he did not object at trial to these comments. *Appellant's brief* at 29.

 Failure to object to instances of improper prosecutorial remarks during trial results in waiver on appeal. *Miller v. State,* 623 N.E.2d 403, 408 (Ind.1993). Defendant waived this issue.

Defendant claims that although he did not object at trial to these remarks, he actually preserved review of this issue for appeal by filing a motion *in limine* before trial, asking that the prosecution refrain from making certain comments. The trial court did not grant defendant's motion *in limine.*

 We have consistently held that "in order to preserve error in the overruling of a pre-trial motion in limine, the appealing party must have objected to the admission of the evidence at the time it was offered. *Conner v. State* (1991), Ind., 580 N.E.2d 214, 220 ...." *Clausen v. State,* 622 N.E.2d 925, 927 (Ind.1993). Again, defendant did not object to the comments at the time they were made and therefore defendant waived review on this issue.

 Defendant finally claims that we should review this issue despite defendant's failure to object to these comments at trial. He argues that these comments subjected defendant to grave peril resulting in fundamental error because they effectively told the jury that while the prosecutor has a duty to present truth at trial, the defendant has no such duty. Defendant contends that the state violated *Miller v. State,* 623 N.E.2d at 408 (error for prosecutor to tell jury prosecutor has duty to present truth while defendant has no such duty).

We do not agree with this contention. The principal error in *Miller* was the state's recitation of the concurring and dissenting opinion in *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); that language was not used here. Further, given the context of the remarks here we fail to find the degree of peril necessary to invoke the fundamental error doctrine.

### V

Defendant lastly argues that the trial court improperly admitted testimony from a witness comparing defendant to a "petty thief" and evidence that defendant had previously broken into Johnson's home.

 At trial, the state called one of its witnesses, Thomas Kochert, to testify. Kochert testified that he saw defendant walk past and then return past Johnson's home late one evening in June of 1994. On cross-examination, defense counsel asked Kochert if he thought "anything was peculiar about it [defendant's walking past Johnson's home] at the time?" Kochert responded that he "kind of did, you know because at the time we thought he was like a petty thief that had lived in the neighborhood ... because, I mean, I didn't know his name. I didn't know

who he was." Defendant did not object to this comment at the time it was made. After redirect and recross examination, defendant then moved for a mistrial claiming that Kochert's calling defendant a petty thief unfairly prejudiced the jury. The state argued that Kochert did not say defendant was a petty thief but that since it was not ordinary for a person to be out alone that late at night walking past a particular house more than once, he thought that the person he saw was a petty thief in general. The state further added that Kochert's statement that he did not know defendant at that time further substantiated that he was not calling defendant in particular a petty thief. The trial court agreed with the state's interpretation and denied defendant's motions for a mistrial and admonition of the jury.

■■■■■ The decision to grant or deny a motion for a mistrial is within the sound discretion of the trial court. *Underwood v. State*, 644 N.E.2d 108, 111 (Ind.1994). A mistrial is "an extreme remedy granted only when no other method can rectify the situation." *Id.*

We do not think the trial court erred in denying a mistrial. First, we think the trial court's interpretation of Kochert's testimony was reasonable. It was not clear that Kochert was specifically saying that defendant was a petty thief. Kochert could have been referring generally to the person he saw acting strangely, whomever that person was, and associated that strange conduct with someone who might be a petty thief. In addition, Kochert's testimony shortly after this comment that he did not know who defendant was further supports the impression that Kochert was not talking about defendant specifically. Second, since defendant did not object to the testimony after it was made, but instead at the end of redirect and recross examination asked for a mistrial, we review the court's decision under the standard of review applied to mistrial rulings. And, as stated above, as mistrials should be granted in only extreme circumstances and we greatly defer to the trial court in this area, we conclude that the trial court's refusal to grant a mistrial was not error.

Defendant also argues that the trial court erred in admitting into evidence a handgun that defendant had sold to his uncle. The handgun turned out to be one that Johnson had reported missing from her home approximately one month before her death. Defendant objected to admission of the handgun at trial, claiming that it constituted evidence of uncharged misconduct. The state countered that the evidence was admissible to show defendant had the ability to enter Johnson's home without being detected. The trial court admitted the evidence, but gave the jury the following limiting instruction at the end of the trial:

> Evidence has been introduced that the Defendant was involved in crimes other than those charged in the information. This evidence has been received solely on the issue of Defendant's identification, purpose, intent, motive, design, or knowledge. This evidence is to be considered by you only for the limited purpose for which it was received.

(R.2075).

■■■■■ Generally, evidence of other crimes or wrongs is not admissible. Ind. Evidence Rule 404(b). However, it may be admissible for purposes other than to show action in conformity with the charged conduct, such as to show "proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." *Id.* If a court determines that the evidence indeed was offered to prove something other than bad character, the court must then determine whether the probative value of that evidence outweighs its prejudicial impact, in accordance with Ind.Evidence R. 403. *Taylor v. State*, 659 N.E.2d 535, 543 (Ind.1995). The decision to admit evidence is within the sound discretion of the trial court and is afforded a great deal of deference on appeal. *Tynes v. State*, 650 N.E.2d 685, 687 (Ind. 1995). "[A] trial court abuses its discretion when it admits evidence of extrinsic acts that are relevant to no issue other than character and to proof of behavior in conformity with that character." *Johnson v. State*, 655 N.E.2d 502, 505 (Ind.1995).

■■■■■ Here, although the admission of the handgun arguably did not go to show that

defendant was more likely to be guilty in this case, but only went to show that he knew how to get into Johnson's home undetected, we think that the probative value of this evidence was lower than its prejudicial effect. Defendant did not dispute being in Johnson's home on the evening of her murder, so the issue of whether or not he could enter her home undetected was not salient here. Also, the fact that defendant was in Johnson's home earlier also was not very helpful to the jury for determining whether he knowingly or accidentally killed Johnson, the major issue presented in this case. Finally, we think that evidence that defendant stole Johnson's gun in the past could be prejudicial as it may tempt the jury to convict defendant in part based on a past wrong that does not have any strong connection to the crime he is charged with here. Therefore, we conclude that under Ind.Evidence R. 403, this evidence should not have been admitted as its prejudicial effect outweighs its probative value here.

However, this is not to say that the trial court's admission of this evidence resulted in reversible error. "A timely and accurate admonition is presumed to cure any error in the admission of evidence. *James [v. State]*, 613 N.E.2d 15, 22 (citing *Green v. State* (1992), Ind., 587 N.E.2d 1314, 1317)." *Lay v. State*, 659 N.E.2d 1005, 1009 (Ind. 1995) (trial court erroneously admitted prior bad character evidence, not reversible error in part because of admonition). As noted above, the court admonished the jury to consider the evidence only for certain limited purposes. Also, although we concluded that the prejudicial effect of the evidence was higher than its probative value, we note that the prejudicial effect was still low. This evidence only went to show a fact that had already been proven, *i.e.*, that defendant could enter Johnson's house. There was no doubt that defendant was in Johnson's home on the evening of the murder, as he admitted being there. Because this evidence was so unrelated to the jury's decision on the major issue in this case—whether or not defendant intentionally or accidentally killed Johnson— we think it highly unlikely that the jury used this evidence improperly in concluding that defendant did kill Johnson knowingly or in-

tentionally. Given this fact along with the fact that the trial court admonished the jury to consider this evidence only for certain purposes, we conclude that the admission of evidence showing a fact that was not in dispute was harmless error here.

### Conclusion

Therefore, we affirm defendant's conviction.

SHEPARD, C.J., and DICKSON, SELBY and BOEHM, JJ., concur.