## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 14 2015, 9:41 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Victoria L. Bailey
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brittney Massey,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | October 14, 2015<br><br>Court of Appeals Case No.<br>49A04-1503-CR-92<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Lisa F. Borges, Judge<br><br>Trial Court Cause No.<br>49G04-1312-MR-76611 |

**Baker, Judge.**

[1] Brittney Massey (Massey) appeals her conviction for Murder,[1] arguing that there is insufficient evidence supporting the conviction. Finding the evidence sufficient, we affirm.

## Facts

[2] On the morning of November 27, 2013, two-year-old Destinee Massey (Destinee) was taken to the emergency room at Riley Children's Hospital in Indianapolis by her mother, Massey, and Massey's husband, Michael Miles. When Destinee arrived at Riley, she was nonresponsive. Massey told the emergency room doctor that she had taken Destinee to the hospital because of changes in Destinee's breathing and her low body temperature. Shortly after her arrival, Destinee stopped breathing and her heart stopped beating. Multiple attempts to revive her were unsuccessful and she was pronounced dead less than two hours after her arrival at the hospital.

[3] Destinee had injuries and trauma to her body that hospital personnel found to be suspicious; therefore, they reported her death to law enforcement. Indianapolis Police Detectives Delbert Shelton and Craig Converse responded to the hospital and spoke with the treating physician, Massey, and Miles. Massey told Detective Converse that the previous day had been a normal one. Miles had gone to work around 2:00 p.m., she and the children had eaten dinner around 8:00 p.m., and then Massey gave Destinee a bath and put her to

---

[1] Ind. Code § 35-42-1-1.

bed around 9:00 p.m. Miles returned home around 12:30 a.m. and, around 1:00 a.m., Miles carried Destinee in to Massey, concerned about her condition. Destinee was making strange moaning noises, bubbles were coming out of her mouth, her head was limp, and she was very cold. Miles wanted to take Destinee to the hospital but Massey did not want to do so. The next morning, at 8:30 a.m., Miles told Massey that they were taking Destinee to the hospital. At that point, Destinee was gasping for breath. They took her to the hospital around 10:00 a.m.

[4] On November 29, 2013, Doctor Randy Tashjian performed an autopsy on Destinee. Doctor Miranda Geller, a forensic pathologist with the Marion County Coroner's Office, testified about the results of the autopsy. The autopsy revealed multiple blunt force trauma injuries to Destinee's head, chest, abdomen, arms, and legs. She also had multiple contusions and abrasions to her face, head, and forehead. Some of the injuries were older and healing but others were more recent and had occurred within a couple of days of her death. Her body bore multiple scars from older injuries. Destinee also had multiple hemorrhages in her skull and brain. Dr. Geller testified that the cause of Destinee's death was a combination of blunt force trauma injuries and a catastrophic lack of oxygen to the brain[2] causing brain injury and the slow death of brain cells. Tr. p. 72. Signs of severe anoxic brain injury include an altered

---

[2] Dr. Geller and the treating physician referred to the lack of oxygen to the brain using multiple terms, including "anoxic brain injury," "diffuse global anoxic injury of the brain," "diffuse severe anoxic brain injury," "second anoxic diffuse brain injury," and "global hypoxia." Tr. p. 12, 67-72.

mental state, changes in body temperature, and limpness of the body. The treating emergency room physician testified that Destinee's condition when she was brought to the hospital was consistent with global hypoxia as a cause of death.

[5] After law enforcement received the autopsy results, they brought Massey into police headquarters for another interview. Massey relayed a different version of events during this interview. She stated that she had been potty training Destinee but that Destinee continued to have accidents. When Destinee urinated in a location other than the bathroom, Massey would spank and strike her with belts, books, magazines, and newspapers. Massey struck Destinee with a pan on one occasion, and struck her in the vagina with a belt on another occasion. Massey stated that the night before Destinee's death, Destinee urinated on the floor after dinner. Massey grabbed Destinee by the face, squeezed it, and dragged Destinee into the bathroom by her face, striking the toddler repeatedly as she dragged her along the floor. Massey gave Destinee a bath and put her to bed. Destinee was still crying. Massey left the room but came back later to tell Destinee to stop crying. Destinee was on her back in bed, and Massey turned her over so that she was face down. Massey held Destinee's arms in such a way that it caused Destinee's face to press into the bed and inhibited her ability to breathe. Destinee eventually stopped crying. Massey stated that she pressed Destinee's face into the mattress because the toddler was crying and Massey was tired of listening to it.

On December 2, 2013, the State charged Massey with murder, class A felony battery, and class A felony neglect of a dependent. Massey waived a jury trial, and her bench trial took place on January 9, 2015. On January 14, 2015, the trial court found Massey guilty as charged. At the February 6, 2015, sentencing hearing, the trial court entered judgment on the murder conviction and vacated the other two convictions on double jeopardy grounds. The trial court sentenced Massey to sixty years imprisonment with four years suspended to probation. Massey now appeals.

## Discussion and Decision

Massey's sole argument on appeal is that the evidence is insufficient to support her conviction for murder. To convict Massey of murder, the State was required to prove beyond a reasonable doubt that she knowingly killed Destinee. I.C. § 35-42-1-1.

When we review a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor assess witness credibility. *McClellan v. State*, 13 N.E.3d 546, 548 (Ind. Ct. App. 2014), *trans. denied*. Instead, we consider only the probative evidence supporting the conviction and the reasonable inferences that may be drawn therefrom. *Id.* If there is substantial evidence of probative value from which a reasonable factfinder could have drawn the conclusion that the defendant was guilty beyond a reasonable doubt, then the verdict will not be disturbed. *Id.*

Massey contends that there is insufficient evidence proving that she acted knowingly. A person "engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). It is well established that intent and knowledge may be proved solely by circumstantial evidence and reasonable inferences drawn from the facts and circumstances of each case. *Heavrin v. State*, 675 N.E.2d 1075, 1079 (Ind. 1996). One "is presumed to have intended the reasonable results of his or her own acts." *Id.*

With respect to the crime of murder, to "knowingly" kill requires, at a minimum, an awareness on the part of the defendant of a high probability that death will result from his actions. *Storey v. State*, 552 N.E.2d 477, 483 (Ind. 1990). In evaluating the defendant's intent, the trier of fact may consider the nature of the attack, the circumstances surrounding the crime, the duration and brutality of the defendant's actions, and the relative strengths and sizes of the defendant and victim. *Williams v. State*, 749 N.E.2d 1139, 1141 (Ind. 2001); *Childers v. State*, 719 N.E.2d 1227, 1229 (Ind. 1999); *Nunn v. State*, 601 N.E.2d 334, 339 (Ind. 1992).

In the case before us, at the time of her death, Destinee weighed approximately twenty pounds and had just turned two years old. Massey was a fully grown adult. Massey admitted that she became angry, grabbed Destinee by the face, and dragged her down the hallway, striking the toddler as she dragged her. She heard Destinee gasping as she squeezed the toddler's face. An hour later, Massey pushed Destinee's face into her mattress to stop her from crying. It was

reasonable for the trial court, acting as factfinder, to infer from these actions that Massey was aware of a high probability that Destinee's death would result from her actions.[3] Given the relative strength and sizes of Massey and Destinee, as well as the duration and brutality of Massey's actions, it was reasonable to infer that Massey acted with the requisite intent to murder Destinee. Massey's arguments to the contrary amount to a request that we reweigh the evidence—a request we decline. Consequently, we find the evidence sufficient to support Massey's murder conviction.

[12] The judgment of the trial court is affirmed.

Bailey, J., and Mathias, J., concur.

---

[3] Massey argues that because the State was unable to discern and prove the precise injury that caused Destinee's death, it was unable to prove her state of mind at the time the fatal action occurred. We do not believe the State is required to meet such a burden. The State proved that blunt force trauma and a catastrophic lack of oxygen to the brain caused Destinee's death, and it proved that Massey struck her child, dragged her down the hall by her face, and then forcibly pushed her face into a mattress and held it there, preventing her from breathing. It is reasonable to infer that Massey acted with the requisite intent throughout the attacks of her child, regardless of which precise injury led to Destinee's death.