

FILED

Feb 28 2020, 9:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

<table>
<tr><td>ATTORNEY FOR APPELLANT</td><td>ATTORNEYS FOR APPELLEE</td></tr>
<tr><td>Matthew D. Anglemeyer<br>Marion County Public Defender<br>Indianapolis, Indiana</td><td>Curtis T. Hill, Jr.<br>Attorney General of Indiana<br><br>Justin F. Roebel<br>Supervising Deputy Attorney<br>General<br>Indianapolis, Indiana</td></tr>
</table>

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert Wayne Moore,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | February 28, 2020<br><br>Court of Appeals Case No.<br>19A-CR-1125<br><br>Appeal from the Marion Superior<br>Court<br><br>The Honorable Grant Hawkins,<br>Judge<br><br>Trial Court Cause No.<br>49G05-1705-F6-18274 |

**Pyle, Judge.**

# Statement of the Case

Robert Wayne Moore ("Moore") appeals, following a bench trial, his conviction for Level 6 felony obstruction of justice. Moore argues that: (1) the trial court abused its discretion in admitting his confession; and (2) his conviction should be vacated because of a detective's false trial testimony. Concluding that the trial court did not abuse its discretion and that his conviction should not be vacated, we affirm Moore's conviction.

We affirm.

# Issues

1. Whether the trial court abused its discretion in admitting Moore's confession.

2. Whether a detective's false trial testimony is a basis for vacating Moore's conviction.

# Facts

On August 12, 2015, a man walking his dog in Fort Benjamin Harrison State Park found the body of a female a few feet from a closed walking trail. The deceased woman was Tina Moore ("Tina"), Moore's stepmother. Tina was wearing a necklace, some disheveled clothing, but no pants or shoes. Detective Theodore Lich ("Detective Lich") from the Lawrence Police Department was assigned to investigate. He observed that Tina "had been dead for a couple of hours." (Tr. 103). Detective Lich also observed signs of trauma on Tina's neck. While Detective Lich was investigating at the park, the Lawrence Police

Department received a missing person report for Tina, which "matched somewhat" the description of the body in the park.

[4] The same day that Tina's body was discovered, Moore and his father provided recorded statements to the police. Sergeant James Vaughan ("Sergeant Vaughan") assisted Detective Lich with conducting Moore's interview. Before this August 12 interview began, the detectives read Moore his *Miranda* rights, and he signed a written waiver form. During the interview, Sergeant Vaughan made the following statements to Moore:

> [A] jury's going to understand that a son is going to help the father. He's going to protect his father.
>
> * * *
>
> [A]ssisting a criminal is sometimes, that's like a misdemeanor because the jury knows, that's family. You can help your father. Okay. You can help your dad. Anyone knows that.
>
> * * *
>
> But maybe your end of it, you just went in there and you saw that she was dead and you helped your father. You helped [him] this far or whatever and that's, and that's your end of it. That's probably what happened that's why if anything happened you got to tell me that.

(State's Ex. 2a). Moore denied any involvement in Tina's disappearance during the interview.

[5] A few days after the initial interview, Moore's father confessed to killing Tina. Thereafter, on August 17, 2015, Detective Lich served Moore with an arrest warrant and brought him in for questioning. Before the interrogation began,

Detective Lich read Moore his *Miranda* rights, and he again signed a written waiver. At the beginning of the interrogation, when discussing the publicly available information regarding Tina's death, Detective Lich stated that Moore's father "did confess, but he didn't say he did it by himself." (State's Ex. 2a). Thereafter, Moore stated that his father admitted to him that he had "killed [Tina][,]" and had "strangled her." (State's Ex. 2a). Moore explained that after killing Tina, his father had asked for help "remov[ing] the body from the premises that way the kids don't see or hear anything." (State's Ex. 2a). Moore observed Tina's body in his father's bedroom on the bed. Moore told Detective Lich that he had helped wrap Tina in a blanket, put her in his father's SUV, and went with his father to dispose of Tina's body in Fort Benjamin Harrison State Park.

[6] Throughout the August 17 interrogation, Moore asked Detective Lich several times what his charges were. Despite having the information, Detective Lich was evasive with providing Moore with the information. Detective Lich did not tell Moore the charges until after Moore made his incriminating statements describing his efforts to assist his father, approximately fifty minutes into the interrogation.

[7] The State initially charged Moore with Level 6 felony obstruction of justice and Class A misdemeanor failure to report a body on August 17, 2015 under cause number 49G05-1508-F6029126 ("initial cause"). However, the State dismissed these charges in February 2016 and refiled identical charges on May 17, 2017

under this cause.[1] On May 26, 2017, Moore had his initial hearing for the current cause. In July 2018, Moore filed an amended motion to suppress the confession that he gave to police during the August 17 interrogation.[2] The trial court held a bifurcated hearing on Moore's amended motion to suppress in November 2018. The State offered a video recording and transcript for each of Moore's August 12 and August 17 recorded statements into evidence. Moore objected to the admission of the August 17 interrogation transcript, which the trial court overruled. On November 29, 2018, the trial court denied the motion.

[8] The same day, the trial court conducted a bench trial. Prior to opening statements, the parties requested that the trial court incorporate the testimony and evidence from the suppression hearing, and the trial court agreed. Moore asked that the court show a continuing objection to the admission of the August 17 transcript. Detective Lich was the only witness to testify at the trial. In addition to the details of his investigation, Detective Lich testified that he had visited Moore's house as part of his investigation and had observed "a large urine spot on the center of the bed[ ]" in Moore's father's bedroom. Based on his training and experience, Detective Lich explained that sometimes people

---

[1] Pursuant to Indiana Evidence Rule 201(a)(2)(c), this Court may take judicial notice of records of a court of this state. Here, we take judicial notice of the initial cause. Our review of those records reveal that Moore had an initial hearing on August 19, 2015.

[2] Moore had originally filed a motion to suppress under the initial cause that was dismissed in February 2016.

urinate at the time of death.  On cross-examination, the following colloquy ensued:

> [Defense Counsel]:  Do you know, do you know where the urine stain came from; that's my question.
>
> The Court:  It's just a yes or no question, sir.
>
> [Detective Lich]:  Yes, I do.
>
> [Defense Counsel]:  Okay.  Where did it come from[?]
>
> [Detective Lich]:  From the victim, Tina Moore.
>
> [Defense Counsel]:  All right.  And do you know, then, under what circumstances it came from the victim?
>
> [Detective Lich]:  Yes.
>
> [Defense Counsel]:  All right.  And do you know when it came from the victim?
>
> [Detective Lich]:  Yes.
>
> [Defense Counsel]:  And you're -- you're saying what, it came --
>
> [Detective Lich]:  When she died, the moment she died, she defecated on herself, yes.
>
> [Defense Counsel]:  She defecated on herself.
>
> [Detective Lich]:  She urinated on herself.
>
> [Defense Counsel]:  And how -- what, the coroner, the coroner told you that?
>
> [Detective Lich]:  I was at the autopsy as well, sir, and I asked that exact question, yes, sir.
>
> [Defense Counsel]:  All right.  And your testimony here under oath is that that urine on the mattress was tested?
>
> [Detective Lich]:  It was tested for DNA.

[Defense Counsel]: Okay. And your testimony here also under oath is that the coroner advised that that -- that urine that was hers that was on the mattress was put there during her death?

[Detective Lich]: Yes.

(Tr. 131-32). The trial court found Moore guilty of Level 6 felony obstruction of justice and not guilty of Class A misdemeanor failure to report a dead body.

[9] Prior to sentencing, defense counsel discovered, and the State confirmed, that there had not been DNA testing on the urine spot on the mattress. Three months after his bench trial, Moore filed a motion to vacate his conviction based on Detective Lich's testimony regarding the DNA testing, and the State filed a response thereto. In its response, the State indicated that it was "unaware of such testing [at trial], but did not know for a fact that such testing had not been completed." (App. 103). At the ensuing hearing on Moore's motion, the trial court found that Detective Lich had testified falsely but that:

> [i]n the scheme of things it was not a factoid upon which I spent a lot of (Inaudible) with, I had to pay attention to other matters of evidence. And I can't say we'll have to cut the wrong information out, where would I be because I didn't concentrate on the wrong evidence, plus I was more concerned with some of the statements made by the Defendant.

(Tr. 149). The trial court denied Moore's motion. The trial court then sentenced Moore to one and a half (1½) years in the Marion County Jail. Moore now appeals.

# Decision

On appeal, Moore argues that: (1) the trial court abused its discretion in admitting his August 17 confession; and (2) his conviction should be vacated because of Detective Lich's false testimony regarding DNA testing. We will address each argument in turn.

## 1. Admission of Moore's Confession

Moore's abuse of discretion argument is twofold. First, Moore argues that his confession was involuntary because Detective Lich violated his Indiana Constitutional rights by refusing to advise him of the charges he faced. Next, Moore argues that his confession was involuntary because "detectives lied to [him] about the facts and misrepresented the law." (Moore's Br. 20). Moore concedes that he "does not claim [that] he did not understand his rights or that he did not validly waive his right to counsel." (Moore's Br. 20).

The decision whether to admit a defendant's confession is within the discretion of the trial court, and it will not be reversed absent an abuse of discretion. *Wright v. State*, 916 N.E.2d 269, 277 (Ind. Ct. App. 2009). A trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before it, or if the court has misinterpreted the law. *Wells v. State*, 904 N.E.2d 265, 269 (Ind. Ct. App. 2009), *trans. denied*. Upon reviewing a challenge to the trial court's decision to admit the defendant's confession, we do not reweigh the evidence but instead examine the record for substantial probative evidence of voluntariness. *Wright*, 916 N.E.2d at 277. When a defendant challenges the admissibility of his confession, the State must prove

beyond a reasonable doubt that the confession was given voluntarily. *Carter v. State*, 730 N.E.2d 155, 157 (Ind. 2000).

[13] The voluntariness of a confession is determined from the "totality of the circumstances." *Berry v. State*, 703 N.E.2d 154, 157 (Ind. 1998). The totality of the circumstances may include the crucial element of police coercion, the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical condition, and mental health. *Miller v. State*, 770 N.E.2d 763, 767 (Ind. 2002). On review, our focus is whether the waiver or confession was free and voluntary and not induced by any violence, threats, promises, or other improper influences. *Atteberry v. State*, 911 N.E.2d 601, 606 (Ind. Ct. App. 2009). We will not reweigh the evidence but instead, we view the evidence most favorable to the State, together with the reasonable inferences that can be drawn therefrom, in order to determine if there is substantial, probative evidence of voluntariness. *Id*. If there is substantial evidence to support the trial court's conclusion, we affirm the trial court's decision. *Id*.

[14] Moore asserts that Detective Lich violated Article 1, section 13 of the Indiana Constitution, which provides in relevant part that the accused shall have the right to "demand the nature and cause of the accusation against him, and to have a copy thereof[.]" When reviewing our Indiana Constitution, it is appropriate that we to look to "the language of the text in the context of the history surrounding its drafting and ratification, the purpose and structure of our constitution, and case law interpreting the specific provisions." *Ajabu v.*

*State*, 693 N.E.2d 921, 929 (Ind. 1998) (quoting *Boehm v. Town of St. John*, 675 N.E.2d 318, 321 (Ind. 1996) (internal quotation marks omitted)).

[15] While Article 1, section 13 of the Indiana Constitution provides the accused with the right to demand and have a copy of the charges he is facing, there is no authority stating that an investigating officer must provide the accused with the information, as suggested by Moore. Instead, case law interpreting this provision requires that an accused be sufficiently informed of the crime of which he is charged in writing so that he is able to prepare a defense. *See*; *Manna v. State*, 440 N.E.2d 473, 475 (Ind. 1982) (recognizing that "the accused's constitutional right to be informed of the nature and cause of the accusation in sufficient detail to enable him to prepare his defense, to protect him in the event of double jeopardy, and to define the issues so that the court will be able to determine what evidence is admissible and to pronounce judgment."); *Hinshaw v. State*, 122 N.E. 418, 420 (Ind. 1919) (explaining that "[t]he words 'nature and cause of the accusation' have a well-defined meaning, and had such a meaning at the time of the adoption of the Constitution. That meaning is, that the gist of an offense shall be charged in direct unmistakable terms."); *State v. Laker*, 939 N.E.2d 1111, 1113 (Ind. Ct. App. 2010) (holding that "[t]he purpose of the charging information is to provide a defendant with notice of the crime of which he is charged so that he is able to prepare a defense."), *trans. denied*.

[16] Furthermore, INDIANA CODE § 35-33-7-4 provides that "[a] person arrested in accordance with the provisions of a warrant shall be taken promptly for an

initial hearing before the court issuing the warrant or before a judicial officer having jurisdiction over the defendant." At this initial hearing, INDIANA CODE § 35-33-7-5(6) requires the trial court to advise a defendant "of the nature of the charge against the person[.]" Our review of the record reveals that Moore asked Detective Lich several times what charges he was facing. Despite having the information, Detective Lich was evasive with providing Moore with the information until after Moore made his incriminating statements. However, Moore received an initial hearing for the instant cause in May 2017 and for the initial cause in August 2015. At these hearings, he was informed of the nature and cause of the charges he was facing, thereby providing him with the opportunity to present a defense. Accordingly, we cannot say that Moore's rights under Article 1, Section 13 of the Indiana Constitution were violated.

[17] Moore next contends that his confession was involuntary because the officers told him that: (1) a jury would understand why he helped his father; and (2) his father did not claim to have acted alone. Here, Moore spoke with police on August 12 and August 17. During the August 12 interview, five days before Moore confessed, Sergeant Vaughn stated that a jury would understand that Moore was helping his father. According to Moore, Sergeant Vaughn's statements misrepresented the law by assuring Moore that he had a "definitive legal defense[.]" (Moore's Br. 26). We disagree and conclude that the sergeant's statements that a jury would be understanding do not equate to legal advice. Turning to the August 17 interrogation, Detective Lich stated that Moore's father "did confess, but he didn't say he did it by himself." (State's Ex.

2a). Given the context in which the statement arose – during a discussion of the unreported details of Tina's death – we cannot agree that Detective Lich's statement rendered Moore's confession involuntary.

[18] Moreover, Moore concedes that he was informed of his *Miranda* rights, that he understood his rights, and that he waived his right to counsel. *See Heavrin v. State*, 675 N.E.2d 1075, 1081 (Ind. 1996) (signing a waiver of rights form provides some indication that a defendant's confession was made voluntarily). Law enforcement did not use violence or threaten Moore at any point during the interrogations. Furthermore, the August 17 interrogation, when Moore confessed, lasted less than an hour. *See Light*, 547 N.E.2d at 1079 (noting that in most cases where confessions are held involuntary, the suspects are interrogated for days, not hours).

[19] In the end, we must determine whether the police conduct overbore Moore's will, thus rendering his statement involuntary. *Henry v. State*, 738 N.E.2d 665, 665 (Ind. 2000). Although we disapprove of deceptive police interrogation tactics, such conduct is not conclusive but rather weighs heavily against the voluntariness of the defendant's confession. *Heavrin*, 675 N.E.2d at 1080. Indeed, our Indiana Supreme Court has upheld the trial court's admission of a defendant's statement into evidence on facts more egregious than those presented here. *See Light*, 547 N.E.2d at 1079 (holding that the trial court did not err by admitting defendant's statement despite evidence of a four-hour interrogation punctuated by conduct of the interrogators involving cursing, lying, and smacking the defendant on the arm). Considering the circumstances

of the interrogation, including the detectives' advisement of Moore's rights, the written waiver forms, the relatively short duration, and the absence of the use of violence or threats, we conclude that Moore's incriminating statement was not involuntary. Accordingly, the trial court did not abuse its discretion in admitting the August 17 confession into evidence at trial.

## 2. Detective Lich's Testimony

[20] Next, Moore alleges that his conviction should be vacated because the State, through Detective Lich, presented false testimony to obtain his conviction. It is well-settled that the knowing use of perjured testimony is fundamentally unfair, and a conviction *obtained by the use of such testimony* will not be upheld. *Wallace v. State*, 474 N.E.2d 1006, 1008 (Ind. 1985) (emphasis added). A conviction obtained through the use of false testimony must fall where the State, knowing the testimony to be false, either solicits such testimony or allows it to go uncorrected when it appears. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). As our supreme court has explained:

> [i]n determining whether to vacate a conviction because of the State's solicitation of false evidence or knowing use of it without correction, . . . the proper question is: did the State impermissibly use false testimony to obtain a conviction in violation of a defendant's due process rights? The main thrust of the case law in this area focuses on whether the [factfinder's] ability to assess all of the facts and the credibility of the witnesses supplying those facts has been impeded to the unfair disadvantage of the defendant.

*Smith v. State*, 34 N.E.3d 1211, 1220 (Ind. 2015).

[21] Below, the State sought to elicit testimony from Detective Lich that he had observed a large urine stain on the mattress in the bedroom of Moore's father, and that based on his training and experience, people urinate at the time of death. On cross-examination, Detective Lich testified that the urine stain had been DNA tested and that the results indicated that the urine stain belonged to the victim. Prior to sentencing, defense counsel discovered, and the State confirmed, that there had not been DNA testing on the urine spot on the mattress. Moore then filed a motion to vacate his conviction based on Detective Lich's false testimony. The deputy prosecutor represented to the trial court that she "did not know for a fact" at the time of trial that DNA testing had not been completed. (App. 103). When the trial court denied Moore's motion, it found that although the detective had testified falsely, "[it] didn't concentrate on the wrong evidence, plus [it] was more concerned with some of the statements made by the Defendant." (Tr. 149).

[22] It should be noted that considerable taxpayer dollars are spent training law enforcement officers to protect all people within the borders of Indiana from criminal activity. *See* IND. CODE § 5-2-1-9. Law enforcement officers also take an oath to support and defend both the Federal and the Indiana Constitutions; they also promise to obey and enforce the laws of this state. Further, law enforcement officers, like all other witnesses, give their oath to tell the **truth** under penalty of perjury. As a result, when law enforcement officers lie under oath, they ignore their publicly funded training, betray their oath of office, and signal to the public at large that *perjury* is something not to be taken seriously.

This type of conduct diminishes the public trust in law enforcement and is beneath the standard of conduct to be expected of any law enforcement officer.

[23] We reiterate that Detective Lich's testimony was before the trial court and not a jury. We generally presume that in a proceeding tried to the bench, a court renders its decisions solely on the basis of relevant and probative evidence. *Hinesley v. State*, 999 N.E.2d 975, 987 (Ind. Ct. App. 2013) *reh'g denied*, *trans. denied*. The risk of prejudice is quelled when the evidence is solely before the trial court. *Id*. Had this been a jury trial, where we do not make the same assumptions and a jury does not provide a statement about what influenced its decision, Detective Lich's testimony would have been interpreted differently. Whether or not the urine on the bed belonged to the victim was not an element of the obstruction of justice crime. Because this was a bench trial, and the trial court specifically found that Moore's confession served as the basis for his conviction, we conclude that Detective Lich's false testimony regarding DNA testing is not a basis for vacating Moore's conviction. Accordingly, Moore's conviction stands.

[24] Affirmed.

Robb, J., and Mathias, J., concur.